# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

SEGONE, INC.,

               **Plaintiff,**

v.

FOX BROADCASTING COMPANY,

               **Defendant.**

**Civil Action No. 3:07cv342-JRS**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANT FOX BROADCASTING COMPANY TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Christopher Sprigman
(admitted *pro hac vice*)
CHRISTOPHER SPRIGMAN PLLC
UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
580 Massie Road
Charlottesville, Virginia  22903-1789
Telephone:     (434) 924-6331
Facsimile:      (434) 924-7536
Email: sprigman@virginia.edu

James Gibson (Va. Bar No. 41469)
JAMES GIBSON PLLC
1926 Hickoryridge Road
Richmond, Virginia  23238
Telephone:     (804) 287-6398
Facsimile:      (804) 289-8683
Email: jgibson@richmond.edu

*Attorneys for Plaintiff*

Dockets.Justia.com

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................1

BACKGROUND .........................................................................................................2

I.    THIS COURT HAS JURISDICTION OVER SEGONE'S REQUEST FOR
DECLARATORY JUDGMENT ...........................................................................6

    A.    The Existence of an "Actual Controversy" Does Not Depend on Whether Fox
Has Made Direct or Indirect Threats of Litigation Against segOne........................7

    B.    None of Fox's Other Arguments Against Jurisdiction Has Merit .......................14

II.    THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF
JURISDICTION ................................................................................................17

CONCLUSION........................................................................................................21

TABLE OF AUTHORITIES

*Cases*                                                                    *Page(s)*

Aetna Cas. & Sur. Co. v. Quarles,
    92 F.2d 321 (4th Cir. 1937) ............................................................ 17

Aetna Life Ins. Co. v. Haworth,
    300 U.S. 227 (1937) .................................................................. 6, 8

Altvater v. Freeman,
    319 U.S. 359 (1943) ...................................................................... 8

Am. Cas. Co. of Reading, Pa. v. Howard,
    173 F.2d 924 (4th Cir. 1949) ........................................................ 17

Arrowhead Indus. Water, Inc. v. Ecolochem,
    846 F.2d 731 (Fed. Cir 1988) ................................................... 13, 14

C. Ven Der Lely N.V. v. F. Iii Maschio S.n.c.,
    561 F. Supp 16 (S.D. Ohio 1982) ................................................. 15

Cardinal Chem. Co. v. Morton Int'l, Inc.,
    508 U.S. 83 (1993) ........................................................................ 8

CoStar Group, Inc. v. LoopNet, Inc.,
    373 F.3d 544 (4th Cir. 2004) ........................................................ 10

Costello Publ'g Co. v. Rotelle,
    670 F.2d 1035 (D.C. Cir. 1981) .................................................... 10

Exxon Corp. v. Fed. Trade Comm'n,
    588 F.2d 895 (3d Cir. 1978) ........................................................... 7

Fonovisa, Inc. v Cherry Auction, Inc.,
    76 F.3d 259 (9th Cir. 1996) ......................................................... 12

Goodyear Tire & Rubber Co. v. Releasomers, Inc.,
    824 F.2d 953 (Fed. Cir. 1987) ..................................................... 13

Grafon Corp. v. Hausermann,
    602 F.2d 781 (7th Cir. 1979) ....................................................... 14

Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,
    443 F. 2d 1159 (2d Cir. 1971) ...................................................... 11

*Green v. Mansour,*
    474 U.S. 64 (1985) ............................................................................ 17

*Japan Gas Lighter Ass'n v. Ronson Corp.,*
    257 F. Supp. 219 (D.N.J. 1966) ...................................................... 13

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*
    312 U.S. 270 (1941) .......................................................................... 8

*MedImmune, Inc. v. Genentech, Inc.,*
    127 S. Ct. 764 (2007) .................................................................... 1, 6

*Microchip Tech., Inc. v. Chamberlain Group,*
    441 F.3d 936 (Fed. Cir. 2006) ........................................................ 14

*Nautilus Ins. Co. v. Winchester Homes, Inc.,*
    15 F.3d 371 (4th Cir. 1994) ............................................................ 17

*Wilton v. Seven Falls Co.,*
    515 U.S. 271 (1995) ........................................................................ 17

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
    907 F. Supp. 1361 (N.D. Cal. 1995) .............................................. 10

*SanDisk Corp. v. STMicroelectronics, Inc.,*
    480 F.3d 1372 (Fed. Cir. 2007) ................................................... 8, 12

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.,*
    ___ F.3d ___, 2007 WL 2215762 (Fed. Cir. Aug. 3, 2007) .................. 9

*Teva Pharms. USA, Inc. v. Pfizer, Inc.,*
    395 F. 3d 1324 (Fed. Cir. 2005) ...................................................... 8

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,*
    482 F.3d 1330 (Fed. Cir. 2007) ...................................................... 13

*Walker Process Equip., Inc. v. FMC Corp.,*
    356 F.2d 449 (7th Cir. 1966) .......................................................... 15

*Warner Bros., Inc. v. Dae Rim Trading, Inc.,*
    677 F. Supp. 740 (S.D.N.Y. 1988), *rev'd on other grounds*, 877 F.2d 1120
    (2d Cir. 1989) .................................................................................. 10

*Water, Inc. v. Ecolochem,*
    846 F.2d 731, 736 (Fed. Cir. 1988) ........................................... 13, 14

Plaintiff's Opposition to Motion to Dismiss Complaint

*White v. Nat'l Union Fire Ins. Co.*,
  913 F.2d 165 (4th Cir. 1990) ........................................................................... 7

*Wilton v. Seven Falls Co.*,
  515 U.S. 271 (1995) ....................................................................................... 17

## Statutes and Other Authorities

17 U.S.C. § 101 .................................................................................................. 16

17 U.S.C. § 102(b) ............................................................................................. 18

17 U.S.C. § 106 ...................................................................................... 16, 18, 19

17 U.S.C. § 107 .................................................................................................. 18

17 U.S.C. § 109 .................................................................................................. 18

17 U.S.C. § 109(a) ............................................................................................. 18

17 U.S.C. § 110(5)(A) .......................................................................................... 3

17 U.S.C. § 504(c) ............................................................................................... 9

17 U.S.C. § 507 ................................................................................................... 9

28 U.S.C. § 2201 ................................................................................................. 6

28 U.S.C. § 2201(a) ........................................................................................... 17

## INTRODUCTION

Fox asks this Court to dismiss segOne's Complaint, arguing that because it has not threatened segOne with a copyright infringement lawsuit, this Court lacks subject matter jurisdiction under the Declaratory Judgment Act to consider segOne's request for declaratory relief. *See, e.g.*, Defendant's Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction (hereinafter, "Fox Mem.") at 8 (stating that "[t]here is no 'actual controversy' between segOne and Fox because Fox has never directly or indirectly threatened segOne with a suit for direct or secondary copyright infringement . . . ."). Fox is well aware that the Supreme Court squarely rejected this argument earlier this year in *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007). As this memorandum will make clear, segOne and Fox stand on opposing sides of a very real, substantial, and current legal controversy. Fox has taken a public position that use of segOne's technology violates copyrights on its television programming, and has sued a segOne customer for copyright infringement on that theory. That lawsuit ended in a settlement without a judgment on the merits of Fox's copyright claims – and, not incidentally, with segOne's loss of a valuable customer.

The same conduct that Fox alleged in its lawsuit against segOne's customer could, according to the black letter of the copyright law, form the basis for a copyright lawsuit against other segOne customers, or against segOne itself. segOne's fear of copyright liability has caused it to suspend its business, even though it believes that business to be perfectly lawful. segOne is not content to expire waiting for Fox to file a complaint. Accordingly, segOne seeks a declaration from this Court to determine its rights. This Court plainly has jurisdiction to hear segOne's Complaint. Fox's motion to dismiss is meritless. This Court should reject it.

## **BACKGROUND**

The Complaint in this case sets out the actual controversy existing between segOne and Fox. Fox has made public claims that the use of a technology manufactured and marketed by segOne – referred to herein as the "segOne Device" – leads to infringement of copyrights in television programming owned by Fox. Moreover, Fox has acted on its belief by suing one of segOne's customers, Flying J, in federal court in New York. In that suit, Fox took the legal position that Flying J's deployment of the segOne device violated Fox's copyrights.

segOne's legal position is, as the Complaint makes clear, entirely opposed to Fox's. segOne does not believe that use of the segOne Device causes copyright infringement.[1] *The segOne Device does not create any copy of Fox's programming. Nor does the segOne Device alter, perform, display, or retransmit Fox's programming in any way.* The segOne Device

---

[1] The segOne Device is a VCR-sized box which, when attached to a television and to a television signal source (such as an over-the-air antenna, cable box or satellite receiver), can detect the transition from television program to advertisement. Upon detecting such a transition, the segOne Device causes the attached television to switch to another input for a period of up to two minutes. During that period, the segOne Device causes different material, stored within the segOne Device, to display over that input on the attached television. At the end of the period, the segOne Device causes the attached television to switch back to the input carrying the cable, satellite or over-the-air programming. Thus, instead of seeing the commercials playing on the cable, satellite, or over-the-air feed during those two minutes, viewers see advertising material or other alternative content supplied either by segOne or by the particular establishment that has contracted for the use of the segOne Device. The advertising and other materials displayed to the viewers are targeted to the specific interests of viewers in the particular establishment utilizing the segOne Device. The purpose and effect of the segOne Device is to increase the relevance, effectiveness, and, as a consequence, the value, of programming shown to persons viewing television in establishments such as bars, health clubs, car dealerships, etc. In each of these settings, the presence of the viewer provides useful information about that viewer's interests, and also about the type of advertising and programming likely to be of interest to that viewer. (These facts are provided as background only and are not necessary to this Court's decision on Fox's current motion.)

simply causes an attached television to display one program rather than another – an activity about which segOne believes the copyright laws have nothing to say.

*This, then, is the situation as it stands now:*

(1)     segOne and Fox have taken opposing legal positions regarding whether use of the segOne Device infringes copyrights held by Fox in its television programming.

(2)     Fox and other television networks ("the network plaintiffs") acted on their legal claims by suing a segOne customer, Flying J, asserting that the customer's use of the segOne Device in its business premises infringed Fox's copyrights.  The network plaintiffs also alleged that Flying J's use of the segOne Device violated New York State unfair competition law.

(3)     Flying J filed a motion to dismiss the copyright claim on two narrow grounds, arguing that its use of the segOne Device was authorized (a) by its commercial license with satellite television distributor EchoStar and (b) by the "homestyle exemption" set out in 17 U.S.C. § 110(5)(A).  The motion also argued that the state law unfair competition claims were preempted by federal copyright law.  *See* Fox Mem., Ex. 3.

(4)     The district court dismissed the network plaintiffs' state law unfair competition claims, agreeing with Flying J that they were preempted by federal copyright law.  The district court refused, however, to dismiss the network plaintiffs' federal copyright claim on either of the two narrow grounds Flying J had offered, holding instead (a) that the EchoStar license was not, on its face, in effect at the relevant time, and (b) that the homestyle exemption did not apply to the use of the segOne Device.  Based on those conclusions, the district court held that the network plaintiffs' copyright claims could proceed to a decision on the merits: whether use of the segOne Device infringed the network plaintiffs' copyrights.  *Id.*

(5)    That did not happen.  Faced with the unwelcome prospect of a determination on the merits of their copyright claims, Fox and the other network plaintiffs instead offered an attractive settlement to Flying J, which Flying J accepted.  As part of that settlement, Flying J agreed to discontinue its use of the segOne Device.[2]

(6)    It is important to emphasize – again – that *the New York court never reached a judgment on the merits of Fox's federal copyright claim.*  Judge Batts's Memorandum & Order (attached to Fox Mem., Ex. 3), does not reach the issue of infringement or provide any relief; it holds only that the network plaintiffs could, on the facts pled, state a claim against Flying J and that Flying J must therefore answer the complaint.  This very basic point must be made completely clear because at several points in its Memorandum, Fox suggests that the Southern District of New York has ruled on the merits of Fox's federal copyright claim, *see, e.g.,* Fox Mem. at 6 (claiming that "dispositive copyright issue resolved in favor of Fox"); *id.* at 8 (New York court ruled "the use of the segOne device in a public place violates broadcasters'

---

[2] In its Memorandum, Fox insinuates that segOne, rather than Flying J, was the real defendant in the New York litigation.  *See, e.g.*, Fox Mem. at 1 (segOne "involved in the Flying J case behind the scenes"); *id.* (segOne "selected and paid for Flying J's lawyer"); *id.* at 5 (segOne "selected" Flying J's counsel in New York litigation); *id.* at 23 (same).  These statements are offered entirely without factual support, and are also false.  Flying J – one of the largest privately-held corporations in the United States (*See* Forbes.com, *The Largest Private Companies* (Flying J 2005 revenues $9.45 billion), *available at* http://www.forbes.com/lists/2006/21/ biz_06privates_Flying-J_M0E5.html) – made its own decision regarding which counsel to hire in the New York litigation, and it also made its own determinations, in consultation with counsel, regarding legal strategy in that case.  *See* Declaration of Stephen Lee Conkling (CEO, segOne, Inc.) attached hereto as Exhibit 1 (hereinafter, "Conkling Declaration").  In short, segOne did not litigate the New York case; Flying J did.  As for Fox's suggestion that segOne should have intervened in that case, leaving aside the question whether such intervention would have been legally permissible, segOne had no desire to drag a customer into its copyright fight with Fox. segOne has filed its Complaint in this Court so that the copyright dispute between the true parties in interest may be settled without further lawsuits against segOne's customers.  Fox's suggestion that segOne had some duty to intervene in the New York litigation, however, does reveal that even Fox itself does not believe its own argument that segOne and Fox have no current legal controversy.

copyrights"), and that segOne is therefore asking this Court to "disagree with" or "nullify" the New York court's ruling. *See, e.g.*, Fox Mem. at 18 ("segOne essentially is asking this Court to disagree with the Southern District[]"); *id.* ("[this Court] could not nullify the Southern District's contrary ruling"); *id.* at 20 (segOne "seeks a declaration . . . that the Southern District was wrong"); *id.* at 23 ("segOne's request for a declaratory judgment effectively nullifies Judge Batts's ruling"). This suggestion is simply false. The New York court never reached the issue of copyright infringement on the merits, and this lawsuit is segOne's effort to do so. Ironically, this is exactly what the New York court ruled *should happen*. Thus, far from an attempt to "nullify" the ruling of the New York court in the Flying J litigation, this lawsuit seeks to pursue the very thing that the settlement in that case forestalled.

(7)     Fox and the other network plaintiffs have, through the Flying J lawsuit, destroyed segOne's business relationship with Flying J. This relationship was of great commercial value to segOne. Fox also has availed itself of a weapon it will use to prevent future deployments of the segOne Device: as evidenced by Fox's own statement in support of its motion that "Flying J agreed to pay a lump-sum figure and cease the disputed conduct," Fox Mem. at 6, Fox apparently feels free to flaunt its ability to extract payment from segOne's customers without having to prove its copyright claims and does not consider itself bound by any confidentiality undertakings regarding the details of the Flying J settlement. If Fox can discuss the Flying J settlement in open court, then clearly there is nothing to stop it from using the settlement to threaten future segOne customers with the prospect of copyright liability.

(8)     As a direct result of the Flying J lawsuit and the allegations of infringement made by Fox and the other network plaintiffs, segOne has ceased its distribution of the segOne Device. segOne has done this because of its fear of copyright liability. That fear has several dimensions.

First, segOne fears that copyright lawsuits against its customers will trigger segOne's contractual obligations to those customers to provide indemnity.  Second, segOne fears that Fox may file a copyright lawsuit claiming that segOne is *directly* liable for infringement.  Third, segOne fears that Fox may file a copyright lawsuit claiming segOne is *contributorily* liable for infringement.  Each of these potential sources of liability will be discussed further below.

(9)     segOne has now filed its Complaint in this Court seeking relief in the form of a declaration that use of the segOne Device does not – contrary to Fox's publicly expressed legal position – create liability for copyright infringement.  Based on the foregoing, it should be obvious that an "actual controversy" exists between Fox and segOne sufficient to give this Court subject matter jurisdiction to adjudicate segOne's Complaint.


I.    **THIS COURT HAS JURISDICTION OVER SEGONE'S REQUEST FOR DECLARATORY JUDGMENT**

The Declaratory Judgment Act (the Act) permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy."  28 U.S.C. § 2201.  The "actual controversy" requirement of the Act is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937). Thus, the Act requires no more stringent showing of justiciability than the Constitution does, and the single question for determination, under both Article III and the Act, is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 127 S.

Ct. 764, 771 (2007) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941));[3]

*accord White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167-68 (4th Cir. 1990).

### A.  The Existence of an "Actual Controversy" Does Not Depend on Whether Fox Has Made Direct or Indirect Threats of Litigation Against segOne

Fox attempts to deny the existence of an actual controversy by insinuating that segOne

cannot assert a declaratory judgment claim because its Complaint "does not contain . . . any

specific factual allegation that Fox directly or indirectly threatened segOne with an infringement

lawsuit or publicly taken [*sic*] the position that segOne has engaged in acts that give rise to

copyright liability."  Fox Mem. at 11.  Fox repeats, at a number of points throughout its

Memorandum, that it has never directly threatened segOne with an infringement lawsuit.  *See,*

*e.g.*, Fox Mem. at 9 ("Fox has done nothing that reasonably gives rise to that alleged fear [of

being sued by Fox]); *id.* at 11 ("segOne does not allege that it ever received any explicit or

implicit threats from Fox during the years it openly marketed the segOne device . . . ."); *id.* at 12

("SegOne does not allege that Fox has ever threatened it with a lawsuit for contributory or

vicarious infringement . . . ."); *id.* at 13 ("Fox never accused *segOne* itself of 'doing anything by

way of direct or contributory infringement' . . . .").

As Fox doubtless knows, declaratory judgment jurisdiction does not require proof of

either direct or indirect threats of litigation.  The Supreme Court made that point clear just a few

months ago in *MedImmune*.  That case involved a declaratory judgment action brought by a

patent licensee against the licensor.  The licensee requested a declaration of the patent's

invalidity.  The licensor filed a motion to dismiss, arguing that the licensee's decision to continue

paying license fees meant that no "actual controversy" existed between the parties sufficient to

---

[3] Moreover, the Declaratory Judgment Act has a remedial character, and should therefore be interpreted liberally.  *Exxon Corp. v. Fed. Trade Comm'n*, 588 F.2d 895, 900 (3d Cir. 1978).

support jurisdiction.  The Supreme Court rejected this argument, holding that it was not necessary to invite litigation by discontinuing payments.  It was enough, said the Court, that the parties had an adverse view on whether the licensee was required to pay fees under the license. *MedImmune*, 127 S. Ct. at 773-74.

But the Court did not stop there.  It went further to re-emphasize what had been clear in *Altvater v. Freeman*, 319 U.S. 359 (1943), an earlier precedent of the Supreme Court limning the Declaratory Judgment Act: that jurisdiction does not depend on the presence or absence of a direct or indirect threat of litigation.  On that basis, the Supreme Court specifically rejected contrary Federal Circuit precedent requiring that a declaratory judgment plaintiff have a "reasonable apprehension of suit":

> Even if *Altvater* could be distinguished as an "injunction" case, it would still contradict the Federal Circuit's "reasonable apprehension of suit" test (or, in its evolved form, the "reasonable apprehension of imminent suit" test, *Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F. 3d 1324, 1333 (2005)). A licensee who pays royalties under compulsion of an injunction has no more apprehension of imminent harm than a licensee who pays royalties for fear of treble damages and an injunction fatal to his business. The reasonable-apprehension-of-suit test also conflicts with our decisions in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), where jurisdiction obtained even though the collision-victim defendant could not have sued the declaratory-judgment plaintiff-insurer without first obtaining a judgment against the insured; and *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239 (1937), where jurisdiction obtained *even though the very reason the insurer sought declaratory relief was that the insured had given no indication that he would file suit*. It is also in tension with *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993), which held that appellate affirmance of a judgment of noninfringement, eliminating any apprehension of suit, does not moot a declaratory judgment counterclaim of patent invalidity.

*MedImmune*, 127 S. Ct. at 774 n.11 (emphasis added).

In its first post-*MedImmune* declaratory judgment holding, the Federal Circuit – which had been disciplined by the Supreme Court in *MedImmune* – dropped its former "reasonable apprehension of suit" test and fell into line.  In *SanDisk Corp. v. STMicroelectronics, Inc.*, 480

 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit stated that a declaratory judgment plaintiff successfully asserts jurisdiction "where the [declaratory defendant] *takes a position* that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id.* at 1381 (emphasis added); *accord Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, ___ F.3d ___, 2007 WL 2215762, at *10 (Fed. Cir. Aug. 3, 2007) (approving jurisdiction and recognizing Supreme Court's rejection of former "reasonable apprehension of suit" test).

That is, of course, exactly what has happened here. segOne has ceased distribution of the segOne Device based on the position taken by Fox that use of the technology infringes Fox's copyrights. Fox has already sued a segOne customer, and the settlement of that case – without, it must be added, any determination of the ultimate merits of Fox's federal copyright claims – leaves segOne facing significant potential liability. As Fox stated in its Memorandum, segOne indemnified Flying J for the cost of the settlement in the New York litigation. Fox Mem. at 6. It is segOne's standard business practice to indemnify its customers for legal claims arising from the use of the segOne Device. *See* Conkling Declaration, attached as Ex. 1. Accordingly, segOne has ceased distributing the segOne Device to avoid further copyright lawsuits against customers that might trigger indemnification undertakings. Of course, segOne does not believe that use of the segOne Device leads to any copyright liability. But given the potentially very large liability for copyright infringement – including the possibility of statutory damages of up to $150,000 per work infringed, *see* 17 U.S.C. § 504(c) – segOne requires a determination of the definitive copyright issues before it resumes distribution of the segOne Device.

Additionally, segOne has a very real and immediate fear that it will be sued for direct and/or contributory infringement. *See* 17 U.S.C. § 507 (establishing three-year statute of

limitations for copyright claims).  The very same conduct that Fox and the other network

plaintiffs complained of in the Flying J litigation – Flying J's use of the segOne Device – could

form the basis of a complaint of copyright infringement against *segOne*.  All of the segOne

Devices deployed in Flying J's business premises – and indeed, all of the segOne Devices

deployed by other segOne customers such as L.A. Fitness – are *owned by segOne*.  *See* Conkling

Declaration, attached as Ex. 1.  Accordingly, segOne faces the very real prospect of a lawsuit for

*direct* copyright infringement – i.e., a suit asserting that because the machines that Fox alleges

cause infringement are and at all relevant times were segOne's property, *segOne* is in fact the

infringer or co-infringer.[4]  *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)

(Copyright Act does not require direct infringer to know he is infringing; direct liability may be

based on "some aspect of volition or causation") (citing *Religious Tech. Ctr. v. Netcom On-Line

Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995)).

Again, segOne is confident that it would ultimately prevail in any copyright lawsuit Fox

might bring.  Indeed, that confidence is the very reason that segOne now seeks a declaratory

judgment.  Yet Fox has taken a different position, and it has done so publicly and filed a lawsuit

based on its view that the segOne Device infringes.[5]  The claims made by Fox and the other

---

[4] Co-infringers of copyright are jointly and severally liable for damages.  *Costello Publ'g Co. v.
Rotelle*, 670 F.2d 1035 (D.C. Cir. 1981); *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F.
Supp. 740 (S.D.N.Y. 1988), *rev'd on other grounds*, 877 F.2d 1120 (2d Cir. 1989).

[5] Fox asserts that segOne cannot fear liability based on the Flying J lawsuit, because the
copyright claim in that litigation was that use of the segOne Device infringed Fox's exclusive
right to authorize public performances and "SegOne does not purport to use its device in that
manner . . . ."  Fox Mem. at 11.  That is incorrect.  If segOne is found to be a direct infringer,
then it is liable for any violation of the public performance right (to the extent such a violation
exists) arising from use of the segOne Device in Flying J facilities.  Additionally, in marketing
the segOne Device, segOne engages frequently in product demonstrations that Fox may, under
the federal Copyright Act, seek to characterize as comprising a public performance.  *See* 17
U.S.C. § 101 (defining "public performance": "To perform or display a work "publicly" means
— (1) to perform or display it at a place open to the public or at any place where a substantial

network plaintiffs in the Flying J lawsuit could readily be turned against segOne, at a time convenient to Fox.

Perhaps more likely, Fox may rattle, but not unsheathe, the sword of copyright liability, knowing that until the underlying copyright issues are resolved segOne cannot distribute its technology without incurring the risk of significant additional liability.  By pursuing this strategy, Fox can count on segOne expiring from lack of revenues.  This strategy gives Fox what it wants without the necessity of testing the merits of its very doubtful copyright claims in federal court.  (For evidence that Fox is in fact pursuing this strategy, one need look no farther than the Flying J litigation: Fox settled rather than face a judgment on the merits of its copyright argument.  Fox's motion here represents the same tactic: trying to get rid of a worrisome case without reaching the substantive copyright issue.)

segOne also faces a no less threatening prospect of a lawsuit claiming that it is *contributorily liable* for copyright infringement. Contributory copyright infringement may exist where the defendant, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."  *CoStar* 373 F.3d at 550 (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F. 2d 1159, 1162 (2d Cir. 1971)).  Again, the very same conduct that Fox and the other network plaintiffs complained of in the Flying J litigation – Flying J's use of the segOne Device – could form the basis of a complaint of contributory copyright infringement against segOne.  Such a complaint would maintain that segOne is liable because it has knowingly made a "material contribution" to a customer's infringing conduct – *viz.*, by providing the "facilities" (i.e., the allegedly infringing device) that

---

number of persons outside of a normal circle of a family and its social acquaintances is gathered . . .").  Accordingly, based on the legal positions taken publicly by Fox in the Flying J litigation, segOne cannot presently pursue its business activities – which it believes are perfectly lawful – without fear that it will be targeted by a copyright lawsuit.

Flying J or some other segOne customer used to infringe Fox's copyrights.  *See Fonovisa, Inc. v Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (knowingly providing facilities for infringing activity is sufficient to establish contributory liability for copyright infringement). Again, segOne does not believe that use of the segOne Device creates either direct or contributory copyright liability.  Yet considering the extant threat of liability for contributory infringement – a form of conduct that carries penalties under the Copyright Act just as severe as those imposed on direct infringers – segOne is bound now to cease the distribution of a technology which it believes is perfectly lawful.

As Fox admits in its Memorandum, and as the Supreme Court recently held in *MedImmune* (itself an intellectual property case), a party may seek declaratory relief if it has been "effectively coerced" into engaging in "threat-eliminating behavior."  *See* Fox Mem. at 10 (citing *MedImmune*, 127 S. Ct. at 772).  This standard is satisfied here.  segOne has been coerced by Fox's public statements and unresolved legal claims into abandoning that which it claims a right to do.  *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Article III jurisdiction may be met where the [declaratory defendant] *takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do*.") (emphasis added).  That segOne's Complaint presents an "actual controversy" appropriate for adjudication could not be more plain.

Fox seeks to avoid *MedImmune* by telling this Court that "segOne has no basis to fear a direct infringement suit," Fox Mem. at 12, and by denying that it "has ever taken a public position that segOne is liable for contributory or vicarious infringement . . . ."  *Id.*  But nothing Fox has said amounts to any kind of release of segOne from liability; accordingly, segOne takes no comfort from Fox's carefully hedged statements.  For reasons already made clear, the

copyright claims that Fox made in the Flying J lawsuit could easily be pressed into service against segOne, under theories of both direct and contributory copyright liability.  And even if Fox did agree to hold segOne harmless, this Court would still have jurisdiction.  As the Court of Appeals for the Federal Circuit recently stated in *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336 n. 2 (Fed. Cir. 2007), jurisdiction is proper under the Declaratory Judgment Act to counter "scare-the-customer-and-run" tactics.  The Federal Circuit was dealing in *Teva* with a request for declaratory relief in the patent context, but the court's reasoning there applies fully to the copyright claims at issue here:

> The Declaratory Judgment Act . . . "serves the policies underlying the patent laws by enabling a test of the validity and infringement of patents that are . . . being used only as . . . 'scarecrows.' " *Arrowhead Indus. Water, Inc. v. Ecolochem,* 846 F.2d 731, 735 (Fed. Cir 1988) [(overruled on other grounds)] (quoting Judge Learned Hand in *Bresnick v. U.S. Vitamin Corp.,* 139 F.2d 239 (2d Cir.1943)). Before the declaratory judgment provisions, competitors were "victimized" by patent owners who engaged in "extrajudicial patent enforcement with scare-the-customer-and-run tactics that infect[ed] the competitive environment of the business community with uncertainty and insecurity" and that rendered competitors "helpless and immobile so long as the patent owner refused to . . . sue." *Id.* at 735 (quoting *Japan Gas Lighter Ass'n v. Ronson Corp.,* 257 F. Supp. 219, 237 (D.N.J. 1966)).  After enactment of these provisions, competitors "were no longer restricted to [the hard] choice between incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a [declaratory] judgment." *Id.*

*Teva*, 482 F.3d at 1336 n.2; *see also Arrowhead*, 846 F.2d at 736 ("It would obviously be unrealistic to limit the required apprehension to one of imminent suit against plaintiff when defendant is exhibiting an intent to delay that suit until after defendant's extra-judicial enforcement efforts have failed and a trial date more convenient for defendant has arrived."); *cf. Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (that defendant has not presently authorized suit not dispositive of future intentions).

Also unavailing is Fox's assertion that "segOne's concerns about its potential customer base are . . . insufficient to give rise to a justiciable controversy."  Fox Mem. at 16.  That argument is not correct, even on its own terms.  *See Grafon Corp. v. Hausermann,* 602 F.2d 781, 783-84 (7th Cir. 1979) (declaratory judgment jurisdiction proper when apprehension that plaintiff or its "*customers* face an infringement suit or threat of one") (emphasis added), *cited with approval in Arrowhead Indus. Water, Inc. v. Ecolochem,* 846 F.2d 731, 736 (Fed. Cir. 1988), *overruled on other grounds by Sony Elecs.*, 2007 WL 2215762.[6]  But in any event Fox's argument simply misses the point.  segOne is not claiming jurisdiction based on some vague "concern about its potential customer base."  For the reasons outlined above, segOne is concerned about *its own* potential liability as well as that of its customers.

**B.  None of Fox's Other Arguments Against Jurisdiction Has Merit**

Fox presents several additional make-weight arguments against jurisdiction.  First, Fox argues that the positions it has taken in the Flying J litigation – positions that clearly create legal risk for segOne – must somehow be disregarded "because that suit has been dismissed with

---

[6] Fox cites to *Microchip Tech., Inc. v. Chamberlain Group*, 441 F.3d 936 (Fed. Cir. 2006) for the proposition that "an Article III controversy does not exist where a product manufacturer such as segOne seeks a declaratory judgment to alleviate potential customers' fears of infringement claims against them."  Fox Mem. at 16.  Fox cannot recruit *Microchip* for this argument without doing great violence to the court's actual holding in that case.  First, in *Microchip* the declaratory judgment plaintiff (Microchip) and defendant (Chamberlain) previously had executed a binding settlement agreement wherein the Chamberlain had *promised not to sue* Microchip on the contested patents.  In addition, counsel for Microchip had admitted that his client had achieved "patent peace" with Chamberlain.  But most importantly, the Federal Circuit decision in *Microchip* preceded the Supreme Court's recent decision in *MedImmune*, wherein the Supreme Court, as is discussed below, rejected the "reasonable apprehension of suit" test employed by the Federal Circuit in *Microchip*.  Thus, as Fox well knows, it cannot rely, in the wake of *MedImmune*, on the Federal Circuit decision in *Microchip*.  The declaratory judgment test used to reach the holding in that case is no longer good law.

prejudice." Fox Mem. at 13.  That contention is palpably absurd.  segOne was not party to the

Flying J litigation.  That litigation did not produce a ruling on the merits of Fox's copyright

claims.  Whether use of the segOne Device would violate Fox's copyrights remains an issue for

judicial determination.  segOne has filed its Complaint to have the issued determined.[7]

Fox also argues that jurisdiction is improper because a favorable ruling from this Court

would not provide redress for segOne's injury, which it mischaracterizes as "the purported

elimination of its potential customer base due to the threat of copyright litigation."  Fox Mem. at

17.  As has been explained above, the injury for which segOne is seeking redress is not limited to

its loss of customers due to Fox's copyright threats and litigation.  segOne's injury also extends

to its current inability to conduct its business because of *its own* risk of copyright liability – a risk

that grows directly out of the public position Fox has taken that use of the segOne Device

infringes its copyrights.  A ruling by this Court granting segOne's request for declaratory relief

would clarify segOne's rights and allow segOne to pursue its business.

Fox offers the related argument that segOne's injury is not redressable because a ruling

by this Court would not be binding on other copyright owners.  Fox Mem. at 18.  This argument,

---

[7] Fox cites two cases in support of this argument, *Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449 (7th Cir. 1966) and *C. Ven Der Lely N.V. v. F. Iii Maschio S.n.c.*, 561 F. Supp 16, 24 (S.D. Ohio 1982).  Both are inapposite.  The Seventh Circuit in *Walker Process* rejected jurisdiction based on the absence of any fresh threats to sue following the settlement of patent litigation.  The decision was based on the same "threat" requirement that the Supreme Court has now rejected in *MedImmune.  See* 356 F.2d at 451-52.  The decision in *C. Ven Der Lely* is similarly unhelpful to Fox.  That case involved a patent infringement lawsuit involving eight patents.  The defendant in that suit filed counterclaims seeking a declaration of invalidity for each of the patents in suit.  During discovery, the patent owner came to the conclusion that four of the patents in question were in fact invalid, and subsequently released all claims against the defendant and sought leave to amend the complaint to eliminate the infringement claims relating to those patents.  The court granted leave to amend the complaint, and then dismissed the declaratory counterclaims relating to those four patents, on the ground that there was "no dispute or controversy regarding them which needs to be adjudicated or should be adjudicated at this time."  561 F. Supp. at 23.

if credited, means that segOne's injury cannot be adequately redressed unless it joins as defendants every owner of a copyright in television programming. Fox's argument collapses under its own weight. segOne seeks from this Court a declaration "that use of the segOne Device, in conjunction with Fox programming, does not result in copyright infringement under the federal Copyright Act, 17 U.S.C. 101 *et seq*." *See* Compl. ¶ 22. A declaration to this effect would certainly clarify segOne's rights with respect to Fox. And given that the federal Copyright Act does not treat the copyrighted audiovisual works owned by Fox differently from those owned by any other broadcast network, the declaration segOne is seeking in this matter will also go far to clarify its rights more generally.

Finally, Fox asserts that this Court lacks jurisdiction because segOne's request for declaratory relief is "not concrete and definite," but "abstract and hypothetical." Fox Mem. at 20. This assertion is utterly without force. The legal dispute between segOne and Fox is a real and substantial controversy that is legally focused and ripe for judicial resolution. *See Aetna*, 300 U.S. at 240-41 (jurisdiction proper when controversy is "definite and concrete, touching the legal relations of parties having adverse legal interests"). The legal questions that segOne presents for decision involve the copyright legality of a particular technology, the segOne Device. segOne has described the operation of this technology, and will offer whatever additional material is necessary to focus the Court's assessment of the copyright consequences of its use. And segOne will offer legal arguments explaining why use of the segOne Device transgresses none of the exclusive rights of copyright owners under the federal Copyright Act. *See* 17 U.S.C. § 106 (enumerating the exclusive rights of copyright owners). If Fox wishes to identify circumstances under which use of the segOne Device would in fact violate Fox's

copyrights, it may do so.  That is a matter appropriate to this Court's consideration of the merits of segOne's request for declaratory relief.

## II.    THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF JURISDICTION

Although declaratory judgment jurisdiction is discretionary, 28 U.S.C. § 2201(a), the Fourth Circuit had made it clear that courts should exercise their discretionary jurisdiction liberally to vindicate the remedial purpose of the statute and to afford relief from uncertainty. *Am. Cas. Co. of Reading, Pa. v. Howard*, 173 F.2d 924 (4th Cir. 1949); *see also Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (purpose of statute is "to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships"); *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994) *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 271 (1995) (court may decline declaratory jurisdiction only for a good reason).

A court's discretionary exercise of its declaratory judgment jurisdiction is essentially equitable in nature, *Green v. Mansour*, 474 U.S. 64 (1985), and the equities here suggest that the dispute between segOne and Fox is particularly well-suited for adjudication via segOne's request for declaratory relief.  The segOne Device is a new technology that will substantially increase the value of television as an advertising platform in commercial settings such as bars, restaurants, car dealerships, physicians' and dentists' offices, and health clubs.  In each of these settings, the segOne Device allows advertisers to reach viewers who, by virtue of their presence in the particular commercial establishment, have provided useful information about the type of advertisements that are relevant to them.  For example, as Fox's own complaint in the Flying J litigation states, advertisers paid Flying J "more than $30,000 per month to air 30-second

Plaintiff's Opposition to Motion to Dismiss Complaint

17

commercials to Flying J patrons" using the segOne Device.  *See* Fox Mem., Ex. 1 ¶ 22.  This is considerably more than Fox and other networks receive, in terms of revenue per viewer, for their non-targeted advertisements.  The reason is not difficult to see – the segOne Device allows advertisers to reach viewers who are particularly receptive to their advertisements.  The long-haul truckers who watch television in Flying J's truck stops are likely to be more interested in advertisements for truck parts than they are in ads for herbal tea.

segOne's technology thus has the potential to grow the market for television advertising in the millions of commercial establishments that have televisions or that might install them.  Fox and the other television networks could, of course, take advantage of this opportunity, either by partnering with segOne or by offering their own competing targeted advertising platforms appropriate for commercial settings.  Instead, Fox and the other networks have embarked on a campaign to sue the segOne technology out of existence.  And the weapon of choice for Fox has thus far been copyright law.

But the Copyright Act does not grant copyright owners unlimited rights.  Rather, it reserves certain specific rights to copyright owners and mandates that all other uses not be controlled by copyright owners – reserving them instead for the benefit of the public.  For example, the Copyright Act grants to copyright owners exclusive rights to reproduce, distribute, and publicly perform and display their works and to prepare "derivative" works (e.g., translations, abridgements, sequels). *See* 17 U.S.C. § 106.  The Copyright Act also *limits* these rights in several ways.  Copyright extends only to original expression, and not to any *ideas* contained in a work.  *See* 17 U.S.C. § 102(b).  An owner's exclusive rights are also limited by the statute's express protection for fair use.  *See* 17 U.S.C. § 107.  And owner rights are further limited by statutory language providing that the "first sale" of a copyrighted work exhausts the distribution

right.  *See* 17 U.S.C. § 109.  This feature of the copyright law, known as the "first-sale doctrine," is the reason why it is legal in the United States to have public lending libraries, or for that matter stores selling used books or renting DVDs; the law gives the copyright owner control of the initial distribution, but bars attempts to restrict the article's re-sale, lending, or rental.  17 U.S.C. § 109(a).

The examples above are replicated in different forms throughout the Copyright Act, which represents a complex legislative balancing of the rights of copyright owners against those of the public at large.  Accordingly, whether the segOne Device violates the copyright law is a question that requires careful examination both of the particular rights granted to copyright owners *and* the limitations on those rights.  After lengthy analysis, segOne believes that its technology does not transgress any of the exclusive rights granted to copyright owners under the federal Copyright Act.  The segOne Device does not create any copy of Fox's programming, nor does it alter, perform, display, or retransmit Fox's programming in any way.  *See* 17 U.S.C. § 106.  The segOne Device simply causes an attached television to display one program rather than another.  This is exactly what happens when a television viewer uses his remote control to *change the channel.*  Fox has not claimed – yet – that changing the channel is a copyright violation.

Viewed in this light, it is not surprising that Fox and its allies targeted a segOne customer, and not segOne itself, for its initial lawsuit.  Fox's copyright claims are weak.  Better, then, for Fox to rid itself of segOne by scaring off its customers with the specter of copyright liability.  Thus the lawsuit against Flying J. To prevail in the Flying J lawsuit, all Fox had to do was create the prospect of significant litigation that would cost Flying J, in terms of legal risk and distraction from its core business, more than it was willing to spend.  Flying J is in the business of running truck stops, and its use of the segOne Device, though certainly an attractive

opportunity, represented an insignificant share of the revenues of one of the largest privately-held companies in the United States.  Once the New York court held that Fox had stated a claim, it made perfect sense for Flying J to settle.

The aim of segOne's declaratory judgment Complaint is to force Fox to end the piecemeal litigation that the Flying J case represents and instead litigate the merits of its copyright claims with the true party in interest.[8]  segOne believes it has the better side in that argument.  It is time to find out.

---

[8] Fox closes its Memorandum with the argument that segOne's declaratory judgment Complaint "is an attempt to engage in piecemeal litigation."  Fox Mem. at 24.  Fox has it exactly backwards – it is Fox's desire to continue to sue segOne's customers, and to extract settlements from them (for which segOne must pay), that will lead to piecemeal litigation.  segOne has filed its Complaint in this Court to put to rest the underlying copyright issue. To be entirely clear: segOne does not believe that *any* of Fox's potential copyright claims has merit, but there can be no question that Fox feels otherwise and has made, and continues to make, its position clear to segOne's substantial detriment.

Relatedly, Fox suggests that segOne should have used the lawsuit filed against it by L.A. Fitness as a vehicle to litigate the underlying copyright issues.  *See* Fox Mem. at 23. Unfortunately, segOne's confidentiality obligations prevent it from using the details of the L.A. Fitness settlement to rebut that argument.  Suffice to say that if that settlement agreement is produced via proper process in this litigation, it will provide valuable information regarding L.A. Fitness's willingness to remain in that litigation long enough for the court to reach a decision on the merits of the copyright claims, and the defects of Fox's argument will become clear. (Indeed, one does not need the settlement to understand why the L.A. Fitness suit was a poor forum for disposition of the copyright issues: L.A. Fitness was not a real party in interest – it is a former segOne customer, not a television network.)  The L.A. Fitness lawsuit does, however, illustrate the significance of the copyright threat to segOne's business.  The threat of copyright litigation caused L.A. Fitness to breach its contractual obligations to segOne, and to incur the cost of litigation in an attempt to escape those obligations.

## **CONCLUSION**

For the foregoing reasons, this Court should reject Fox's motion to dismiss and order

Fox to answer segOne's Complaint.

Respectfully submitted,

segOne, Inc.

By: _____/s/_____

Christopher Sprigman
Admitted *pro hac vice*
Attorney for segOne, Inc.
Christopher Sprigman PLLC
University of Virginia School of Law
580 Massie Road
Charlottesville, Virginia  22903-1789
(434) 924-6331 phone
(434) 924-7536 fax
sprigman@virginia.edu

James Gibson
Virginia Bar No. 41469
Attorney for segOne, Inc.
James Gibson PLLC
1926 Hickoryridge Road
Richmond, Virginia  23238
(804) 287-6398 phone
(804) 289-8683 fax
jgibson@richmond.edu

Dated: August 9, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of August, 2007, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert M. Tyler, Esq.
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
rtyler@mcguirewoods.com

Paul B. Gaffney, Esq.
Williams & Connolly LLP
725 Twelfth Street NW
Washington, DC 20005
pgaffney@wc.com

/s/
_____
James Gibson
Virginia Bar No. 41469
Attorney for segOne, Inc.
James Gibson PLLC
1926 Hickoryridge Road
Richmond, Virginia 23238
(804) 287-6398 phone
(804) 289-8683 fax
jgibson@richmond.edu