# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| SEGONE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )        Civil Action No. 3:07cv342-JRS |
| | ) |
| FOX BROADCASTING COMPANY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF

## ITS MOTION TO DISMISS

Paul B. Gaffney
Jessamyn S. Berniker
Michael T. Morley
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
(202) 434-5000

Robert M. Tyler
MCGUIREWOODS LLP
One James Center
Richmond, VA 23219
(804) 775-1000

*Attorneys for Defendant*

Dockets.Justia.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

I.    THE *FLYING J* OPINION WAS A DISPOSITIVE RULING ON THE
      HOMESTYLE EXEMPTION SAFE HARBOR.............................................. 2

II.   SEGONE LACKS STANDING. ............................................................................ 5

      A.    The Injuries SegOne Alleges Cannot Be Redressed by a Favorable
            Decision for It Against Fox........................................................................ 5

      B.    SegOne's Allegations Are Too Abstract To Support Jurisdiction. ......... 8

III.  THERE IS NO "ACTUAL CONTROVERSY" HERE....................................... 10

      A.    *MedImmune* Requires Focusing on the Defendant's Actions.............. 10

      B.    Fox Has Not Taken Any Action That Creates a Case or Controversy
            Here. ......................................................................................................... 11

            1.    SegOne's Asserted Fear of Its Own Liability Does Not Create a
                  Case or Controversy.................................................................... 11

            2.    The Concluded *Flying J* Litigation Is Not a Basis for
                  Jurisdiction. ................................................................................ 12

      C.    Liability Concerns of Potential Customers Do Not Create a Case or
            Controversy.............................................................................................. 13

            1.    Fox Has Not Threatened SegOne's Customers. .......................... 13

            2.    Third Parties' Purported Fear of Liability Does Not Create
                  Jurisdiction. ................................................................................ 14

IV.   THE COURT CAN AND SHOULD EXERCISE ITS DISCRETION TO
      DECLINE TO HEAR THIS CASE. ................................................................. 15

      A.    A Declaratory Judgment Would Not Resolve Any Uncertainty........... 16

      B.    A Declaratory Judgment Would Lead to Piecemeal Litigation and
            Reward SegOne's Procedural Gamesmanship......................................... 16

CONCLUSION ................................................................................................................. 19

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*ABC, Inc. v. Flying J, Inc.*, No. 06 Civ. 2967 (DBA), 2007 U.S. Dist. LEXIS 13252
(S.D.N.Y. Feb. 22, 2007) ......................................................................1, 3, 5

*Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321 (4th Cir. 1937)...................................... 16

*Aralac, Inc. v. Hat Corp.*, 166 F.2d 286 (3d Cir. 1948) ............................................................ 15

*CAE Screenplates, Inc. v. Beloit Corp.,* 957 F. Supp. 784 (E.D. Va. 1997)............................... 11

*C.B.C. Distribution & Marketing, Inc. v. Major League Baseball Advanced Media, L.P.*,
No. 4:05CV252MLM, 2005 U.S. Dist. LEXIS 24900 (E.D. Mo. June 8, 2005)............. 17

*Circuit City Stores, Inc. v. Speedy Car-X, Inc.*, No. 3:94-CV-712, 1995 U.S. Dist. LEXIS
6515 (E.D. Va. Mar. 27, 1995) ..................................................................... 11

*Dunn Computer Corp. v. Loudcloud, Inc.,* 133 F. Supp. 2d 823 (E.D. Va. 2001)...................... 10

*Edelman v. N2H2, Inc.*, 263 F. Supp. 2d 137 (D. Mass. 2003)..................................................... 9

*Frank Krasner Enterprises, Ltd. v. Montgomery County*, 401 F.3d 230 (4th Cir. 2005)........... 6, 7

*Grafon Corp. v. Hausermann*, 602 F.2d 781 (7th Cir. 1979) ..................................................... 15

*Jamie Music Publ'g Co. v. Roc-A-Fella Records, LLC*, No. 05 Civ. 9922 (BSJ) (JCF),
2007 U.S. Dist. LEXIS 26679 (S.D.N.Y. Apr. 12, 2007)................................................. 17

*Ledford v. Delancey*, 612 F.2d 883 (4th Cir. 1980) .................................................................... 8

*MedImmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764 (2007)..................................... 10, 12, 13, 14

*Microchip Technology, Inc. v. Chamberlain Group*, 441 F.3d 936 (Fed. Cir. 2006) .............13, 15

*Santillan v. City of Reedley, Civ. F 07-391 AWI SMS*, 2007 U.S. Dist. LEXIS 48351
(E.D. Cal. June 27, 2007) ................................................................................. 12

*Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840 (E.D. Va. 2003) ..........16, 17

*Teva Pharmaceuticals, USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330
(Fed. Cir. 2007).............................................................................................. 14

*Walker Process Equipment, Inc. v. FMC Corp.,* 356 F.2d 449 (7th Cir. 1966) ...............12, 13, 15

*Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) .................................................................15, 16

## FEDERAL STATUTES AND RULES

17 U.S.C. § 106 ................................................................................................ 8

17 U.S.C. § 110(5)........................................................................................3, 5, 8, 9

28 U.S.C. § 2201(a) ...................................................................................... 10

Fed. R. Civ. P. 24(b) .................................................................................... 17

## OTHER AUTHORITY

Nate Raymond, Don't Touch That Dial, *IP Law & Business* 16 (Aug. 2006)............................ 11

## <u>INTRODUCTION</u>

SegOne's Opposition makes clear that its declaratory judgment Complaint is premised on nothing more than segOne's unhappiness with legal precedent from the U.S. District Court for the Southern District of New York, and has nothing to do with any actions taken by Fox Broadcasting Company ("Fox") or any of the other *Flying J* Plaintiffs.  Each of segOne's so-called "several dimensions" of "fear" of litigation against it or against hypothetical future customers, Opposition ("Opp.") at 5-6, can be traced directly to Judge Batts' decision in *ABC, Inc. v. Flying J, Inc.*, No. 06 Civ. 2967 (DBA), 2007 U.S. Dist. LEXIS 13252 (S.D.N.Y. Feb. 22, 2007), holding that use of segOne's commercial-replacement device in a public establishment exposes the user to copyright liability.

This explains why everything about segOne's lawsuit is the opposite of what one would expect from a proper declaratory judgment lawsuit.

• A proper declaratory lawsuit is brought by a plaintiff that fears it will be sued unless it refrains from conduct it believes to be lawful.  But segOne, which admits that it has stopped marketing its device, Opp. at 1, has filed this action because it fears it would *not* be sued and thus have no chance to attempt to generate contrary legal precedent that it hopes might revive its business.

• A proper declaratory lawsuit is brought by a plaintiff that seeks to *remove* legal uncertainty about its conduct.  But segOne has filed this action because it wants to *increase* legal uncertainty, by (it hopes) obtaining a second legal opinion disagreeing with Judge Batts' analysis in *Flying J*.  SegOne may hope to use such an opinion to persuade potential customers that the second court has the correct view of the law, but the existence of a second opinion reaching a

different result would in no way remove the legal risk that potential customers would have to consider based on the existence of the *Flying J* decision.

- A proper declaratory lawsuit is one that provides the plaintiff with a meaningful remedy. But a ruling in segOne's favor here against Fox would not remedy segOne's alleged injury—the specter of litigation or liability hanging over the use of the segOne device at public establishments. Any potential future segOne customer would still face exposure from other copyright owners as well as from programming suppliers (satellite and cable televisions firms), as LA Fitness' lawsuit demonstrates.[1]

- A proper declaratory lawsuit is brought by a plaintiff that is forced to act by the declaratory defendant's delay in bringing its own potential lawsuit. But here, it is segOne, not Fox or the other *Flying J* Plaintiffs, that is the dilatory party. SegOne lay in wait until the *Flying J* lawsuit had been brought, decided in the plaintiffs' favor, and then resolved by settlement before segOne chose to seek declaratory relief in a different forum.

For any of a number of mandatory and discretionary grounds, segOne's declaratory judgment action should be dismissed.

## I.  THE *FLYING J* OPINION WAS A DISPOSITIVE RULING ON THE HOMESTYLE EXEMPTION SAFE HARBOR.

According to segOne, "[i]t is important to emphasize" that Judge Batts did not issue "*a judgment on the merits of Fox's federal copyright claim*." Opp. at 4 (emphasis in original). While it is true that no *judgment* was entered, her decision was without question a

---

[1] As discussed in Fox's opening brief ("Fox Mem.") at 7, segOne was sued by one of its customers, LA Fitness, which sought to invalidate its contract on the ground that it put LA Fitness in breach of its programming supply agreement with DirecTV, a satellite firm.

2

dispositive *ruling* on the merits—specifically, the merits of Flying J's only conceivable liability defense. Judge Batts could not have been more clear: First, the "homestyle exemption" provided by 17 U.S.C. § 110(5)(A) applies only to those public establishments that display copyrighted works "on a single receiving apparatus of a kind commonly used in private homes." *ABC, Inc.*, 2007 U.S. Dist. LEXIS 13252, at *18. Second, based on the *Flying J* complaint's description of the segOne device as an apparatus connected to a television set to display replacement commercials from another source (the same description provided by segOne in its Complaint, *see* Compl. ¶¶ 4-5), Flying J's use of the segOne device *disqualified* it from receiving the protection of the safe harbor. *ABC, Inc.*, 2007 U.S. Dist. LEXIS 13252, at *23-25.

Judge Batts squarely held that "the replacement of advertisements using the segOne technology in conjunction with the public performance of Plaintiffs' copyrighted works, *does not implicate* the homestyle exemption" and that "[i]t would be *entirely improper* for the Court to construe the homestyle exemption in such a manner." *Id.* at *23-24 (emphasis added). To remove any possible doubt about the dispositive nature of her ruling, Judge Batts went on to emphasize that she found that the homestyle exemption did not even "*potentially*" apply, *id.* at *24-25 (emphasis added), to protect Flying J from liability for the unauthorized public performance of the plaintiffs' copyrighted works.[2]

---

[2] SegOne also mischaracterizes why the court rejected Flying J's other defense, that its agreement with nonparty EchoStar somehow constituted the *Flying J* Plaintiffs' consent to the public performance of their copyrighted works in this manner. Citing only one of the court's two alternative holdings, Opp. at 3, segOne ignores the court's outright rejection of the defense: "the Court notes that the specific provision of the agreement to which Defendants point did not explicitly authorize Defendants to perform publicly Plaintiffs' copyrighted audiovisual works along with the replacement advertisements shown by Defendants through their [segOne] service." *ABC, Inc.*, 2007 U.S. Dist. LEXIS 13252, at *6.

The ruling in the *Flying J* lawsuit is what precipitated the situation of which segOne complains. The ruling not only held that a claim for copyright infringement exists against one who uses the segOne device in a public establishment as Flying J did—to replace commercials that come with the programming with commercials Flying J sold to its own customers. It also eliminated any realistic prospect of Flying J prevailing if it defended the suit through a final judgment. The case settled—with Flying J making a lump-sum payment and agreeing to the relief the plaintiffs sought by injunction, *i.e.*, to stop using the device—simply because there was nothing left to litigate.[3]

SegOne's description of Judge Batts' ruling as a temporary decision that left Fox with "the unwelcome prospect of a determination on the merits," Opp. at 4, is false. Fox and the other plaintiffs sued to *obtain* a ruling on the merits—obviously not to avoid one. Flying J sought to avoid trial, moving to dismiss by arguing that the homestyle exemption applied to its conduct as a matter of law. The *Flying J* Plaintiffs were then able to achieve a favorable settlement because Flying J was left defenseless. SegOne's argument is nothing more than an attempt to obscure what this declaratory judgment lawsuit is really about: segOne's effort to revisit a harmful precedent and create a split of authority that might revive the company's prospects.

---

[3] There are no "confidentiality undertakings," Opp. at 5, preventing Fox from discussing the settlement.

4

II.    **SEGONE LACKS STANDING.**

A.    **The Injuries SegOne Alleges Cannot Be Redressed by a Favorable Decision for It Against Fox.**

SegOne does not dispute the legal test for Article III standing: a plaintiff must be able to demonstrate an injury in fact that is redressable by a decision in the present lawsuit in its favor. *See* Fox Mem. at 17. SegOne's Opposition fails to refute Fox's showing that no injury alleged by segOne can be redressed by this lawsuit.

SegOne alleges the following two "injuries in fact" in an attempt to establish standing: (i) segOne's alleged "reasonable fear of substantial copyright liability" for either direct or secondary infringement and (ii) the alleged "chilling effect of the threats of such alleged liability on segOne's customer base." Compl. ¶¶ 17, 18; Opp. at 15. As noted above, the obvious source of any "reasonable fear" of liability and of any "chilling effect" on segOne's customer base is the February 2007 United States District Court opinion holding that a public establishment that displays television programming on a set attached to a segOne commercial-replacement device cannot claim the homestyle exemption of 17 U.S.C. § 110(5)(A). *See ABC, Inc.*, 2007 U.S. Dist. LEXIS 13252, at *23-25. It is that legal ruling, not any subsequent conduct by Fox (or any of the other *Flying J* Plaintiffs), that would cause any potential segOne customer or insurer to fear liability. No result in this lawsuit could remedy alleged injuries that are in fact traceable to the existence of this legal precedent. If Fox Broadcasting Company ceased to exist—or, less dramatically, issued a blanket promise never to sue any future segOne customer—the *Flying J* decision would remain to create the climate of legal risk that segOne claims has harmed its business. For four separate reasons (only one of which segOne has addressed), the redressability prong of the standing analysis cannot be satisfied:

5

1.      As Fox pointed out in its opening brief, a favorable decision here would not remove the threat of contractual and other liability to third-party satellite and cable television service providers.  SegOne already has lost a customer, LA Fitness, because of LA Fitness's fears of being found in breach of its agreement with satellite service provider DirectTV, pursuant to which it received the programming feed the segOne device would disrupt.  *See* Fox Mem. at 7. Such contractual risks exist with any other satellite or cable service providers, all of which transmit their own programming and sell their own advertising and thus are unlikely to consent to the use of a device to replace them with advertisements sold for someone else's profit. According to the controlling law of this Circuit, as expressed in *Frank Krasner Enterprises, Ltd. v. Montgomery County*, 401 F.3d 230 (4th Cir. 2005), where, as here, the actions of independent third parties stand between the plaintiff and redress of its injuries, a lawsuit must be dismissed for lack of standing.  *See id.* at 235.  Fox relied on this case in its opening brief, *see* Fox Mem. at 18, and segOne has not attempted to distinguish or address it in any way.  For this reason alone, dismissal is required.

2.      Even if the injury alleged by segOne stemmed only from the threat of liability posed by the claims that were asserted by the eleven plaintiffs in the *Flying J* litigation, that injury could not be redressed by this lawsuit against only one of those eleven plaintiffs. There is not a single description of Fox's actions in segOne's Complaint or Opposition that does not apply equally to the ten other plaintiffs in the *Flying J* case.  *See*, *e.g.*, Compl. ¶ 13 ("In the Flying J Suit, Fox and the other broadcast networks alleged . . . ."); *id.* ¶ 17 (Fox "has asserted, along with other network plaintiffs in the Flying J litigation, . . . ."); Opp. at 3 ("Fox and other television networks . . . acted on their legal claims by suing a segOne customer, Flying J . . . .").

6

Accordingly, if, as segOne asserts, it is true to say that the actions of *eleven* media companies that sued Flying J create a threat of liability to it and its business, it must be equally true that a favorable decision against Fox would do nothing to remedy that threat because there would remain ten other media companies posing the same threat of liability. *See Frank Krasner Enters., Ltd.*, 401 F.3d at 235. Fox raised this point in its opening brief, *see* Fox Mem. at 18, but segOne has ignored it.

      3.     To the extent one credits segOne's allegations that Fox could some time in the future sue it for direct or secondary copyright infringement, *see* Opp. at 10-11, the same could be said of any of a number of copyright owners that would have a strong economic incentive to prevent public establishments from using commercial-replacement devices. For example, the NFL—whose broadcasts were the subject of several infringement claims in the *Flying J* lawsuit[4]—quite obviously wants to ensure that the advertisements sold to support Sunday afternoon broadcasts are not replaced in commercial establishments (*e.g.,* sports bars) where these copyrighted games are shown. SegOne misses the point when it characterizes this as an argument that segOne would have to sue all copyright owners for its lawsuit to establish an injury that is redressable. *See* Opp. at 15-16. Rather, the injury is not redressable because it stems from a federal court's ruling regarding use of the segOne device, which could be relied on by any copyright plaintiff, and which therefore itself casts the specter of potential liability over any potential segOne customer.

      4.     It bears observing, finally, that a favorable decision for segOne would not even resolve the issue of whether a segOne customer could, without fear of liability, use a

---

[4] *See* Exhibit 1 to Fox Mem. (*Flying J* Compl.) ¶ 24.

7

segOne device attached to a set tuned only to a *Fox* channel.  This is so because, as segOne

recognizes, *see* Compl. ¶ 10, Fox channels carry television programming and motion pictures

owned by third-parties, each with their own exclusive rights the Copyright Act allows them to

vindicate.  None of these third parties would be bound by a ruling adverse to Fox here.  Thus,

even if a declaration favorable to segOne "would certainly clarify segOne's rights with respect to

Fox," Opp. at 16, it would not even clarify segOne's rights with respect to any other entity whose

copyrighted works appear on Fox channels.  Under these circumstances, the decision segOne

seeks cannot redress in any respect segOne's claimed injury, and dismissal is required.  *See*, *e.g.*,

*Ledford v. Delancey*, 612 F.2d 883, 886 (4th Cir. 1980) (affirming dismissal for lack of standing

where decision plaintiff sought could not give him the practical remedy he sought).

### B.    SegOne's Allegations Are Too Abstract To Support Jurisdiction.

SegOne offers no relevant response to Fox's Article III standing challenge that the

Complaint fails to describe a "concrete and definite" controversy.

Flying J faced liability not because of some abstract "use of segOne's

technology," Opp. at 1, but because Flying J infringed copyright owners' rights to control the

public performance of their audio-visual works, *see* 17 U.S.C. § 106, when it displayed their

television programming at its truck stops.  Flying J's use of segOne's commercial-replacement

device did not in itself cause liability, as segOne erroneously suggests; the use simply deprived

Flying J of a safe harbor from liability—the homestyle exemption for publicly performing

copyrighted works in public establishments via an apparatus "commonly used in private homes."

17 U.S.C. § 110(5)(A).  And this does not even completely define the safe harbor of § 110(5)(A),

since to claim the benefit of the safe harbor a public establishment must also demonstrate that (i)

it did not charge patrons to see or hear the transmission, *see id.* § 110(5)(A)(i), and (ii) the signal was not further transmitted to the public, *see id.* § 110(5)(A)(ii).

SegOne admits that its two known customers each used the segOne device in different ways. *See* Declaration of Stephen Lee Conkling ("Conkling Decl."), *attached as* Ex. 1 to Opp., ¶¶ 4-5. Whether any past or potential future segOne customer would be liable for copyright infringement would depend on a number of factors not presented here because of the abstract manner in which segOne has brought this issue to the Court. These factors include: where the customers would use the device (*e.g.*, is the public performance or display right implicated?); whether the customers would use the device in conjunction with channels with or without the consent of the applicable copyright owners (*e.g.*, authorized or unauthorized public performance); and whether the customers would charge for or retransmit the programming (*e.g.*, satisfaction of the other requirements of the safe harbor).

A ruling here in segOne's favor thus would not produce a judgment establishing or disproving liability for copyright infringement, but would only answer in the abstract a question about the applicability to the actions of hypothetical future segOne customers of a portion of the § 110(5)(A) safe harbor. There is thus no jurisdiction to hear segOne's claims. *See Edelman v. N2H2, Inc.*, 263 F. Supp. 2d 137, 139 (D. Mass. 2003) (dismissing declaratory judgment copyright lawsuit as seeking "advisory opinion" where the court lacked information about "the full content of what [plaintiff] proposes to publish and thus, the extent to which any such publication might fall within or without the protections of the various laws [plaintiff] cites.").

## III.     THERE IS NO "ACTUAL CONTROVERSY" HERE.

Article III and declaratory judgment jurisdiction is absent for the additional

reason that there is no "actual controversy" here.  28 U.S.C. § 2201(a); Fox Mem. at 8.

### A.     *MedImmune* **Requires Focusing on the Defendant's Actions.**

SegOne does not dispute that the relevant inquiry for determining whether there is

an "actual controversy" sufficient to confer declaratory judgment jurisdiction requires

examination of Fox's actions, not segOne's.  Because segOne cannot point to a single action

taken by Fox that would support jurisdiction here, dismissal is required.

SegOne seeks to transform the Supreme Court's recent decision in *MedImmune,*

*Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 772 (2007), into a talisman that would justify ignoring all

prior declaratory judgment precedent and eliminating well-established jurisdictional

requirements for declaratory judgment actions.  *See, e.g.*, Opp. at 14 n.6.  But *MedImmune* does

no such thing.  To the contrary, *MedImmune* maintains real requirements for declaratory

judgment jurisdiction by holding that such a suit may proceed where the plaintiff faces a threat of

litigation or has been "effectively coerced" into engaging in threat-eliminating behavior.  127 S.

Ct. at 772-74.  Thus in *MedImmune* a patent licensee in good standing—and thus not in

reasonable apprehension of suit—was entitled nevertheless to sue for a declaration of invalidity

and unenforceability, as the patent holder *had* threatened an infringement suit if no royalties

were paid.

The Supreme Court's holding is consistent with longstanding pre-*MedImmune*

precedent, which holds that the focus of the case or controversy inquiry remains on the actions of

the defendant.  *See, e.g., Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 827

10

(E.D. Va. 2001) ("[T]he proper focus in this regard is on [the declaratory] defendant's conduct and statements"); *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 788 (E.D. Va. 1997); *Circuit City Stores, Inc. v. Speedy Car-X, Inc.*, No. 3:94-CV-712, 1995 U.S. Dist. LEXIS 6515, at *10 (E.D. Va. Mar. 27, 1995). Declaratory judgment jurisdiction is not boundless after *MedImmune*. The Supreme Court in that case did not license declaratory judgment actions against defendants from whom no threat ever issued. To the contrary, even after *MedImmune* declaratory judgment jurisdiction remains dependent on the conduct of the defendant, who must engage in some threatening or coercive behavior.

> **B.** **Fox Has Not Taken Any Action That Creates a Case or Controversy Here.**
>
> > **1.** **SegOne's Asserted Fear of Its Own Liability Does Not Create a Case or Controversy.**

SegOne does not and cannot point to any actions by Fox that support its supposed fear that Fox will sue it for direct or contributory infringement. The allegations made in the *Flying J* complaint were insufficient in themselves to state a secondary infringement case against segOne. As segOne's counsel told a reporter at the time the Flying J complaint was filed: "You have to jump through a lot more hoops to prove the technologist [*i.e.*, segOne] liable." Nate Raymond, Don't Touch That Dial, *IP Law & Business* 16 (Aug. 2006). To try manufacture a case or controversy, segOne now tries to self-report its own conduct—the use of the segOne device in private product demonstrations—that segOne assumes Fox would consider to amount to copyright infringement if Fox only knew about it. *See, e.g.*, Opp. at 10 n.5. But segOne still cannot point to any action by Fox, other than Fox's status as a former plaintiff in the concluded

*Flying J* litigation, in support of its assertion that Fox said or did anything to coerce segOne into

taking or abstaining from any action based on a fear of litigation.[5]

SegOne is thus unable to attribute to Fox or the other *Flying J* Plaintiffs its own

unilateral decision to stop marketing the segOne device. *MedImmune* makes clear that for

jurisdiction to adhere, the plaintiff must demonstrate that its threat-eliminating behavior was

"coerced" by the defendant. *See MedImmune*, 127 S. Ct. at 772-74. SegOne cannot point to any

actions by Fox that coerced it into this choice. Clearly, it was the Southern District of New

York's decision in *Flying J* that prompted segOne to take its allegedly threat-eliminating step to

stop marketing its device, since segOne continued to market the device after the *Flying J*

plaintiffs sued, and segOne only stopped after the adverse ruling was issued.

### 2.    The Concluded *Flying J* Litigation Is Not a Basis for Jurisdiction.

Even if it were the *Flying J* litigation itself, and not Judge Batts' ruling, that

prompted segOne to shut down its business, that could not confer jurisdiction here. Where

infringement allegations are made—and resolved—in litigation, as they were in the *Flying J*

case, they cannot form the basis for a subsequent declaratory judgment action based on those

allegations. The Seventh Circuit, in *Walker Process Equipment, Inc. v. FMC Corp.*, 356 F.2d

449 (7th Cir. 1966), held that there was no case or controversy based on the defendant having

previously sued one of the plaintiff's customers for patent infringement. *Id.* at 451.

---

[5] SegOne also asserts that it "has a very real and immediate fear" that it will be sued for damages
as a joint or contributory tortfeasor based on Flying J's past use of the segOne Device. Opp. at
9-10. But it is well settled that a declaratory judgment action is inappropriate where, as here, it
seeks to resolve possible damages that accrued in the past. *See, e.g., Santillan v. City of Reedley*,
Civ. F 07-391 AWI SMS, 2007 U.S. Dist. LEXIS 48351, at *17 (E.D. Cal. June 27, 2007)
("declaratory relief is inappropriate to adjudicate past conduct, such as when the damages have
already accrued") (quotations omitted).

Explaining that the defendant had not charged the plaintiff or any of its customers with infringement since the previous litigation concluded, the court held that "[w]hatever infringement charges were made in the Greensboro litigation were resolved, and the controversy between the parties terminated." *Id.* *See also Microchip Tech., Inc. v. Chamberlain Group*, 441 F.3d 936, 941-42 (Fed. Cir. 2006). Similarly here, segOne cannot point to any allegation of infringement or any other action by Fox since the resolution of the *Flying J* litigation, and thus there is no basis for segOne to allege an "actual controversy." SegOne unsuccessfully attempts to argue that *Walker Process* is no longer good law after *MedImmune* because it discussed whether there was a threat of litigation. Opp. at 15 n.7. But *MedImmune* does not hold that litigation threats are irrelevant; it merely holds that there may be declaratory judgment jurisdiction where the plaintiff has been otherwise coerced. *See MedImmune*, 127 S. Ct. at 773-74 (holding that coercion of threat-eliminating behavior is an alternative basis for jurisdiction). *Walker Process*'s holding—that finally resolved litigations cannot be a basis for declaratory relief—is simply not addressed in *MedImmune*.

### C.    Liability Concerns of Potential Customers Do Not Create a Case or Controversy.

SegOne's Opposition is unable to refute Fox's showing that segOne cannot rely on the theoretical liability concerns of potential customers to secure jurisdiction. *See* Fox Mem. at 14-17. This is so for either of the two independent reasons discussed below.

### 1.    Fox Has Not Threatened SegOne's Customers.

Putting aside that segOne does not even have any customers or potential customers because of its unilateral decision to stop distributing its device, Opp. at 5, segOne cannot point to any threats or other actions taken by Fox against segOne's customers. SegOne

therefore resorts to futile speculation what Fox's future actions could theoretically be if segOne were to acquire customers in the future. SegOne states, for example, that Fox's ability to settle is "a weapon it *will use* to prevent *future* deployments of the segOne Device" and "*there is nothing to stop if from using the settlement to threaten future segOne customers* with the prospect of copyright liability." Opp. at 5 (emphasis added).

SegOne's attempt to base jurisdiction on its crystal ball's prediction that Fox will one day use the *Flying J* decision to threaten to sue customers fails in light of *MedImmune*'s requirement that declaratory judgment action be based on concrete, coercive acts by the defendant, not its potential future conduct. *See MedImmune,* 127 S. Ct. at 772-74. And segOne's reliance on cases such as *Teva Pharmaceuticals, USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1336 n.2 (Fed. Cir. 2007), for the proposition that jurisdiction should exist to combat so-called "scare-the-customer-and-run" tactics, Opp. at 13, is equally misplaced. The language in those cases concerns protecting against a declaratory defendant that *refuses* to sue and instead makes threats of suit in order to extract out-of-court settlements. Such conduct, the cases explain, leads to disputed legal issues not being resolved in the courts. *See Teva*, 482 F.3d at 1336, n.2. The opposite is true here. Fox and the other *Flying J* Plaintiffs did file a lawsuit against the one segOne customer of which they were aware, which did result in legal review by a court and a favorable decision for them on the merits.

## 2.    Third Parties' Purported Fear of Liability Does Not Create Jurisdiction.

SegOne's argument that it has been economically harmed by its inability to obtain customers in light of potential customers' fear of liability, *see* Compl. ¶ 18, is similarly unavailing. The argument that a plaintiff has been economically impacted by actions third-party

14

customers have taken to avoid liability has been explicitly rejected as a basis for subject matter jurisdiction.

The Federal Circuit in *Microchip Technology, Inc. v. Chamberlain Group*, 441 F.3d 936 (Fed. Cir. 2006), held that there was no case or controversy where a product manufacturer seeks a declaratory judgment to alleviate the fears of its customers. Even though the defendant in that case had sued the plaintiff's customers and the plaintiff's sales had dropped, the court held that there was no case or controversy even though the plaintiff could not sell its product without subjecting its customers to the threat of a lawsuit because "[s]uch an economic interest alone . . . cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act." *Id.* at 943.[6] *See also Walker Process*, 356 F.2d at 452 (declining to find jurisdiction where there was "no more than an economic interest"); *Aralac, Inc. v. Hat Corp.*, 166 F.2d 286, 295 (3d Cir. 1948) ("an economic interest is not enough to create justiciability").

## IV.    THE COURT CAN AND SHOULD EXERCISE ITS DISCRETION TO DECLINE TO HEAR THIS CASE.

SegOne cites *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court's leading case on courts' discretion to hear declaratory judgment actions, *see* Opp. at 17, but neglects to acknowledge that case's core holding: "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to

---

[6] SegOne attempts to distinguish *Microchip* on an irrelevant point. Although it is true that the defendant in *Microchip* had promised not to sue the plaintiff, *see* Opp. at 14 n. 6, that fact was unrelated to the Federal Circuit's conclusion that an economic interest was insufficient to confer jurisdiction. Nor does the holding of *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783-84 (7th Cir. 1979) (cited at Opp. at 14), support segOne's argument that it may sue based on the liability fears of third party concerns. The *Grafon* court rested its finding of an "actual controversy" on facts that included the defendants' making numerous charges that the plaintiff itself, as well as its customers, would be infringing the defendant's product. *See Grafon*, 602 F.2d at 784.

considerations of practicality and wise judicial administration." 515 U.S. at 288. These considerations favor dismissal here.

### A.    A Declaratory Judgment Would Not Resolve Any Uncertainty.

For all the reasons stated above demonstrating lack of standing for segOne's failure to allege a redressable injury, *see supra*, § II.A, it is also evident that the declaratory judgment segOne seeks would not "serve a useful purpose" because it would not "clarify[] and settl[e] the legal relations in issue" or "afford relief from the uncertainty." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (quotations omitted); Fox Mem. at 22. Whatever uncertainty that may exist today as a result of Judge Batts' ruling will continue to exist even if segOne were to obtain the declaration it seeks here. Copyright owners not involved in this case would still have the legal precedent supporting a cause of action against those who use the device in the manner Flying J did. Nor would such a declaration relieve potential customers of the breach-of-contract threats, from DirecTV and other suppliers, of the sort that induced LA Fitness to back out of its relationship with segOne.

### B.    A Declaratory Judgment Would Lead to Piecemeal Litigation and Reward SegOne's Procedural Gamesmanship.

SegOne does not dispute the basic premise that promoting efficiency and avoiding procedural fencing and piecemeal litigation are factors that properly justify a court's decision to decline to exercise jurisdiction over a declaratory judgment action. *See* Fox Mem. at 21-22. Instead, segOne makes the odd assertion that the *Flying J* Plaintiffs, including Fox, are the ones who engaged in piecemeal litigation because they *settled* with Flying J after suing and receiving a favorable ruling. *See* Opp. at 20 n.8. Unsurprisingly, segOne cites no case to support the proposition that settling a lawsuit, a practice "strongly favor[ed]" by federal policy, *Silicon*

*Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 846 (E.D. Va. 2003), *aff'd*, 176 F. App'x 109 (Fed. Cir. 2006) (per curiam), constitutes engaging in piecemeal litigation.[7]  And even if the general proposition held water, it does not here, where the *Flying J* settlement followed a ruling on the merits of the key legal issues.

The uncontroverted facts show that it is segOne that is engaging in disfavored procedural fencing.  SegOne either admits or does not dispute that it:  closely followed the *Flying J* case, *see* Conkling Decl. ¶ 2; funded the defense of the *Flying J* case through an indemnity agreement, *see id.*; could have sought to intervene in that case as a defendant; after the Southern District of New York issued a dispositive ruling adverse to its customer's legal position, funded a settlement of that case, *see* Opp. at 9; and then as soon as that case was settled and dismissed, rushed to a new forum to seek a contrary legal opinion before a different judge.

SegOne now asserts that it could be jointly and severally liable as a copyright infringer with its customer Flying J, *see* Opp. at 10 n.4.  If so, it could have moved for permissive intervention as a defendant under Federal Rule of Civil Procedure 24(b) in the *Flying J* case.  *See Jamie Music Publ'g Co. v. Roc-A-Fella Records, LLC*, No. 05 Civ. 9922 (BSJ) (JCF), 2007 U.S. Dist. LEXIS 26679, at *7-8 (S.D.N.Y. Apr. 12, 2007) (granting permissive intervention in copyright case); *C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, No. 4:05CV252MLM, 2005 U.S. Dist. LEXIS 24900, at *15-16, (E.D. Mo. June 8, 2005) (granting permissive intervention as a defendant in a case involving intellectual property rights).  SegOne did not even try to intervene.  The conclusion is

---

[7]  Nor can it be piecemeal litigation to sue the only segOne customer that Fox knew was using the device in public establishments.  The only other customer SegOne identifies, LA Fitness, sued segOne to avoid having to use the devices in its health clubs.  *See* Opp. at 20 n.8.

inescapable that segOne stayed close to the *Flying J* litigation but refused to intervene, precisely so it could have a second bite at the apple if the court there disagreed with its legal position—which is exactly what happened.  This Court should not reward segOne's gamesmanship.

Finally, it is difficult to imagine an approach that would cause more piecemeal litigation than segOne's approach here.  After eleven media companies successfully sued segOne customer Flying J, segOne has responded by suing only one of those eleven plaintiffs.  If segOne's lawsuit against Fox were successful, and if segOne were to sign up a new customer that began using the segOne device in public establishments in a manner similar to the way Flying J used it, nothing that occurs in this lawsuit would prevent any of those ten other *Flying J* Plaintiffs, or any satellite or cable television provider, or any other copyright owner, from following on the success of the *Flying J* case by bringing an affirmative copyright action against that segOne customer.  Because the best result that segOne could hope for here is simply to win a second legal opinion on the homestyle exemption that reaches a result different from that of the Southern District of New York, the result that segOne hopes for here—two contrary rulings in two different districts—would only spur more litigation.

18

**CONCLUSION**

For the reasons stated here, and in Fox's opening brief, the Complaint should be

dismissed.

Respectfully submitted,

FOX BROADCASTING COMPANY

By Counsel

/s/
Robert M. Tyler (VSB No. 37861)          Paul B. Gaffney
rtyler@mcguirewoods.com                  pgaffney@wc.com
David E. Finkelson (VSB No. 44059)       Jessamyn S. Berniker
dfinkelson@mcguirewoods.com              jberniker@wc.com
Attorneys for Fox Broadcasting Company   Michael T. Morley
MCGUIREWOODS LLP                         mmorley@wc.com
One James Center                         Attorneys for Fox Broadcasting Company
901 East Cary Street                     WILLIAMS & CONNOLLY LLP
Richmond, VA  23219-4030                 725 12th Street, NW
Telephone:    (804) 775-7695             Washington, DC 20005
Facsimile:    (804) 698-2197             Telephone:    (202) 434-5000
                                         Facsimile:    (202) 434-5029

## CERTIFICATE OF SERVICE

I certify that on August 17, 2007, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel for Plaintiff segOne, Inc.

James Gibson
James Gibson PLLC
1926 Hickoryridge Rd.
Richmond, VA 23238
804-287-6398
Fax: 804-287-6398
Email: jgibson@richmond.edu

Christopher J. Sprigman
University of Virginia School of Law
580 Massie Rd.
Charlottesville, VA 22903
434-924-6331
Fax: 434-924-7536
Email: sprigman@virginia.edu


/s/_____
David E. Finkelson
VSB No. 44059
Attorney for Fox Broadcasting Company
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia  23219-4030
Telephone:     (804) 775-7695
Facsimile:     (804) 698-2197
dfinkelson@mcguirewoods.com