**Unpublished Cases Cited in Defendant's Reply Memorandum In Support of Its Motion to Dismiss and Not Attached to Defendant's Opening Memorandum**

*C.B.C. Distribution & Marketing, Inc. v. Major League Baseball Advanced Media, L.P.*, No. 4:05CV252MLM, 2005 U.S. Dist. LEXIS 24900 (E.D. Mo. June 8, 2005) ................2

*Jamie Music Publ'g Co. v. Roc-A-Fella Records, LLC*, No. 05 Civ. 9922 (BSJ) (JCF), 2007 U.S. Dist. LEXIS 26679 (S.D.N.Y. Apr. 12, 2007)....................................................7

*Santillan v. City of Reedley, Civ. F 07-391 AWI SMS*, 2007 U.S. Dist. LEXIS 48351 (E.D. Cal. June 27, 2007)..........................................................................................10

Dockets.Justia.com

LEXSEE 2005 U.S. DIST. LEXIS 24900



Caution
As of: Aug 17, 2007

**C.B.C. DISTRIBUTION AND MARKETING, INC., Plaintiff, vs. MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P., Defendant.**

**Case No. 4:05CV252MLM**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

***2005 U.S. Dist. LEXIS 24900*; *2005-02 Trade Cas. (CCH) P74,907***

**June 8, 2005, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part *C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced Media, L.P., 2006 U.S. Dist. LEXIS 6385 (E.D. Mo., Feb. 17, 2006)*

**DISPOSITION:** [*1] Motion to Intervene filed by the MLBPA GRANTED. [15]

**COUNSEL:** For C.B.C. Distribution and Marketing, Incorporated, Plaintiff: Rudolph A. Telscher, Jr., HARNESS AND DICKEY, St. Louis, MO.

For Major League Baseball Advanced Media, L.P., Defendant: Jeffrey H. Kass, Jay A. Summerville, ARMSTRONG TEASDALE, LLP, St. Louis, MO; Patrick M. Kuhlmann, FOLEY AND LARDNER, Milwaukee, WI.

For Major League Baseball Players Association, The, Intervenor: Donald R. Aubry, Steven A. Fehr, JOLLEY AND WALSH, Kansas City, MO; Karen R. Glickstein, Russell S. Jones, Jr., Monica M. Fanning, SHUGHART AND THOMSON, Kansas City, MO; Virginia A. Seitz, SIDLEY AUSTIN BROWN & WOOD, Washington D.C.

For Major League Baseball Advanced Media, L.P., Counter Claimant: Jay A. Summerville, Jeffrey H. Kass, ARMSTRONG TEASDALE, LLP, St. Louis, MO.

For C.B.C. Distribution and Marketing, Incorporated, Counter Defendant: Rudolph A. Telscher, Jr., HARNESS AND DICKEY, St. Louis, MO.

For Major League Baseball Players Association, The, Counter Claimant: Monica M. Fanning, SHUGHART AND THOMSON, Kansas City, MO; Steven A. Fehr, JOLLEY AND WALSH, Kansas City, MO.

**JUDGES:** MARY ANN L. MEDLER, UNITED STATES MAGISTRATE [*2] JUDGE.

**OPINION BY:** MARY ANN L. MEDLER

**OPINION**

**MEMORANDUM OPINION**

This matter is before the court pursuant to the Motion to Intervene filed by the Major League Baseball Players Association ("MLBPA"). Doc. 15. Plaintiff C.B.C. Distribution and Marketing, Inc., ("CBC") has filed a Response to the Motion to Intervene. Doc. 21. The MLBPA has filed a Reply. Doc. 23. CBC has filed a Surreply. Doc. 24. The parties have consented to the jurisdiction of the undersigned United States Magistrate

Judge pursuant to *28 U.S.C. § 636(c)*. Doc. 13.

**BACKGROUND**

1. CBC alleges in its Complaint that it is a provider of fantasy sports products; that it has operated sports fantasy games since 1992; and that it offers, among other things, baseball games which can be played via a variety of methods including the phone, mail, e-mail, fax, and internet. Doc. 1, Compl., P4.

2. CBC further alleges that it formerly entered into a licensing agreement with the MLBPA which was executed in or around July/August 2002 and which expired on December 31, 2004, and that this licensing agreement covered, inter alia, rights to names, nicknames, numbers, likenesses, signatures, pictures, playing [*3] records, and biographical data. Compl., P15.

3. By e-mail dated January 19, 2005, George Kliavkoff, Senior Vice President for Major League Baseball Advanced Media, L.P., ("Advanced Media" or "Major League Baseball" or "MLBAM") wrote Charles Wiegert, Vice President of CBC, stating that Advanced Media and the MLBPA "announced that Major League Baseball will be the exclusive licensee and sublicensor of the MLB player's [sic] rights with respect to interactive media Fantasy Baseball Games." Compl. Ex. A. The e-mail further stated:

> Please also be aware that MLBAM has not yet issued any applicable licenses for the MLB Rights and other related fan activities for the 2005 season and, except for certain licenses in the wireless Licensed Media, the MLBPA has not issued any applicable licenses for the PA Rights for 2005. Please be advised that if your Company is using the above-described rights without a license, all such uses must cease immediately.

Compl., Ex. A.

4. In a January 24, 2005, letter to USA Today, Advanced Media expressed "surprise" that USA Today.com was allegedly offering Internet fantasy baseball games and stated that USA Today's actions "constitute [*4] false and/or deceptive advertising and trade practices in violation of *Section 43(a)* of the Lanham Act and applicable state law." Compl., Ex. B.

5. In its Complaint wherein it names only Advanced Media as Defendant CBC seeks declaratory judgment and asks the court to declare, in regard to its conduct described above, that: CBC's actions do not violate the Lanham Act (Count I); by CBC's operating a sports fantasy league business CBC does not infringe any copyright allegedly owned or controlled by Advanced Media in regard to sports statistics and related information (Count II); CBC's actions in operating a sports fantasy league business do not violate any right of publicity owned or controlled by Advanced Media (Count III); and CBC's actions in operating a sports fantasy business do not violate any state unfair competition or false advertising laws (Count IV). Additionally, CBC asks the court to enjoin Advanced Media and its agents, servants, employees, attorneys, and affiliates and those persons or entities in active concert or participation with Advanced Media from interfering with CBC's business related to sports fantasy teams, either directly through action against CBC or independently [*5] through actions against businesses who contract with CBC for sports fantasy team related products, or from threatening litigation or otherwise making statements that CBC and/or CBC's customers have infringed or are infringing any rights of Advanced Media.

6. Among the affirmative defenses asserted in its Answer to the Complaint, Advanced Media contends that the MLBPA has granted Advanced Media the exclusive right and license to exploit the following asserted rights of the Players: names, nicknames, likenesses, signatures, jersey numbers, pictures, playing records, and biographical data ("Player Rights"), via all interactive media including, but not limited to, the Internet and wireless devices, with respect to fantasy baseball games. Doc. 7, Affirmative Defenses, P3. Advanced Media further alleges as an affirmative defense that CBC has failed to join an indispensable party, the MLBPA. Id. at P5.

7. Advanced Media has filed counterclaims against CBC alleging that CBC's use of Player Rights in connection with operating its fantasy baseball games is unauthorized; that this conduct violates the common law, trademark, unfair competition, and false advertising laws; and that [*6] this conduct violates the Lanham Act, *15 U.S.C. §§ 1051 et seq.* In addition to seeking damages, Advanced Media asks this court to grant injunctive relief.

Doc. 7 at 5-6.

7. The MLBPA has filed a Motion to Intervene. Doc. 15. In support of its Motion to Intervene, the MLBPA alleges, pursuant to *Fed. R. Civ. P. 24(a)(2)*, that it should be permitted to intervene in this matter because it has an interest relating to the property or transaction which is the subject of the Complaint filed by CBC; because a decision by this court may affect the MLBPA's ability to license and enforce Player Rights now and in the future; and because the MLBPA's interests are not adequately represented by the existing parties as the MLBPA's interest in this litigation is much broader than the interests of Advanced Media. Doc. 15, P7. The MLBPA further contends that it should be permitted to intervene permissibly pursuant to *Fed. R. Civ. P. 24(b)(2)* because its claims and defenses with respect to the Complaint have questions of law and fact in common with those to be litigated in the main action. Doc. 15, [*7] P10.

**DISCUSSION**

**A. Standing:**

As a preliminary matter, the Eighth Circuit has consistently held that "Article III standing is a prerequisite for intervention in a federal lawsuit." *Curry v. Regents of the Univ. of Minnesota, 167 F.3d 420, 422 (8th Cir. 1999)* (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 570 (8th Cir. 1998))*. Constitutional standing requires the following showing:

> (1) the party must have suffered an "injury in fact," consisting of an "invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent[,]" *id. 504 U.S. 555 at 560, 112 S.Ct. 2130 at 2136, 119 L. Ed. 2d 351 at 364 (1992)* (internal quotation marks and citations omitted), (2) there must be a causal connection between the injury and the conduct complained of, where the injury is fairly traceable to the challenged action, and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Planned Parenthood of Mid Missouri and E. Kansas, Inc. v. Ehlmann, 137 F.3d 573, 577 (8th Cir. 1998)* (quoting *Lujan v. Defenders of Wild Life, 504 U.S. 555, 560-561, 119 L. Ed. 2d 351, 112 S. Ct. 2130(1992))*. [*8] See also *Mausolf v. Babbitt, 85 F.3d 1295, 1301 (8th Cir. 1996)*.

In the matter under consideration the MLBPA and the Players are the ultimate owners of the rights at issue in this matter. Indeed, the MLBPA has suffered injury in fact as a result of CBC's expropriating intellectual property rights belonging to the MLBPA. Also, the MLBPA will suffer further injury if the court finds, as requested by CBC that by CBC's operating a baseball fantasy league business CBC does not infringe any copyright or violate any right of publicity owned or controlled by Advanced Media, that it does not violate any state unfair competition or false advertising laws, and/or it does not violate any rights possessed or controlled by Advanced Media. The court finds, therefore, as a preliminary matter, that the MLBPA has the standing which is a prerequisite for intervention in the matter under consideration. See *Curry, 167 F.3d at 422*.

**B. Intervention of Right:**

*Rule 24(a) of the Federal Rules of Civil Procedure* states in pertinent part:

> Upon timely application, anyone shall be permitted to intervene in an action:....or (2) when the applicant claims an interest [*9] relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"*Rule 24* is to be construed liberally and doubts resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999)*. A party seeking intervention of right must establish that it: "(1) has a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *Curry, 167 F.3d at 422* (citing *Standard Heating, 137 F.3d at 571*(quoting *Mausolf, 85 F.3d at 1299*); *Chiglo v. City of Preston, 104 F.3d 185, 187 (8th Cir. 1997))*. "The party seeking intervention must satisfy all three parts of [this]

test." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir.2004)* (citing [*10] *Chiglo, 104 F.3d at 187*).

The MLBPA has an interest in protecting the intellectual property rights which it has licensed to Advanced Media, which property rights are at issue in the matter under consideration. Thus, the court must next determine whether MLBPA's rights might be impaired by the disposition of this case and whether Advanced Media adequately represents the MLBPA's interests. [1] See *id*. A party cannot intervene as of right if another party in the litigation adequately represents its interest. *Fed. R. Civ. P. 24(a)(2)*; *Jenkins v. Missouri, 78 F.3d 1270, 1275 (8th Cir. 1996)*. "A party generally need only make a *minimal* showing 'that representation "may be" inadequate' to be entitled to intervene on that basis." *Little Rock Sch. Dist, 378 F.3d at 780* (quoting *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc., 60 F.3d 1304, 1308 (8th Cir. 1995)* (citing *Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10(1972, 30 L. Ed. 2d 686, 92 S. Ct. 630))* (emphasis added). As the intervenor, however, the MLBPA bears the burden of showing inadequate representation by existing [*11] parties under *Rule 24(a)(2)*. See *United States v. Union Elec. Co., 64 F.3d 1152, 1157 (8th Cir. 1995)*; *Kansas Pub. Employees, 60 F.3d at 1308-09* (holding that an intervenor has the burden to show its interest is not adequately protected by existing parties); *Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994 at 997-98 (1993)* (holding that an applicant for intervention bears burden of showing the applicant's interest is not adequately protected by existing parties).

1 A party seeking to intervene, however, need not establish that its interests will actually be impaired, *Jenkins v. Missouri, 78 F.3d 1270, 1275 (8th Cir. 1996)*; *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc., 60 F.3d 1304, 1307-08 (8th Cir. 1995)*. Rather, the standard is whether the intervenor will or will not be impaired in its ability to protect its interest. See id.

The MLBPA argues that once the license which it has granted Advanced Media expires or is terminated Advanced Media [*12] will be in the position of any other provider of interactive fantasy baseball games as it will need to obtain a license from the MLBPA in order to use Player Rights. Additionally, the MLBPA argues that Advanced Media's interest is limited to Player Rights in the interactive media while the outcome of this matter may impact licensing of Player Rights in contexts other than the interactive media. The court agrees that the outcome of this matter may have an impact on the MLBPA's ability to protect its right to license and enforce Player Rights in the future and that the interests which the MLBPA seeks to protect by intervening in this matter are broader than those which Advanced Media seeks to protect. The court finds, therefore, that the interests of Advanced Media are not clearly co-extensive with those of the MLBPA. Thus, the interests of the MLBPA will not be adequately protected by Advanced Media. [2] As such, the court finds that the MLBPA has satisfied all three parts of the test for intervention as of right. See *Little Rock Sch. Dist., 378 F.3d at 780*. The court finds, therefore, that the MLBPA will be permitted to intervene as a matter of right.

2 In its Response CBC suggests that interests of the MLBPA are adequately represented by Advanced Media because Advanced Media is represented by "two large, prestigious law firms," one which employs 1000 attorneys nationally and the other which employs approximately 250 attorneys in several nationwide offices. Doc. 21 at 5. The court notes that the size of the law firms representing Advanced Media is not relevant; rather, as set forth above, the issue for the court's consideration is whether the interests of the MLBPA and Advanced Media are co-extensive and whether the MLBPA will be adequately protected by Advanced Media. See *Little Rock Sch. Dist., 378 F.3d at 780*.

[*13] **C. Permissive Intervention:**

The court will, alternatively, consider whether the MLBPA should be permitted to intervene permissively. *Rule 24(b)* states in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action:....or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Permissive intervention is left to the discretion of the court. *Fed. R. Civ. P. Rule 24(b)*; see *Curry, 167 F.3d at 422*. In evaluating an application for permissive

intervention, the court must determine "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Fed. R. Civ. P. 24(b)*. First, the court notes that the Complaint in this matter was filed in February 2005. The MLBPA participated in the Rule 16 Scheduling Conference. The Case Management Order which issued subsequent to that Conference provides that discovery should be completed by March 27, 2006; that dispositive motions are due on April 3, 2006; and that this matter is set for trial July 24, 2006. As [*14] such, the court notes that permitting the MLBPA to intervene will not delay proceedings in this matter and finds, therefore, that CBC will not be prejudiced in this regard. See e.g., *United States v. Union Elec. Co., 64 F.3d 1152, 1159 (8th Cir. 1995)* ("The question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change.") (citing *Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 998-99 (8th Cir. 1993))*.

As stated above, in its Complaint CBC asks the court to declare that its operating a baseball fantasy league business does not infringe or violate any rights owned or controlled by Advanced Media in regard to Player Rights and related information; such rights are those which Advanced Media and the MLBPA contend are the subject of the license granted to Advanced Media by the MLBPA which license is currently in effect.

Additionally, in its proposed Counterclaims the MLBPA contends that although CBC had a license for use and exploitation of Player [*15] Rights, that license expired in 2004; that currently CBC holds no such license; that it has no entitlement to use Player Rights in its interactive fantasy baseball games; and that by so doing CBC will be misappropriating Player Rights and will violate a Post-Termination/Expiration clause in the expired license agreement CBC had with the MLBPA. Both CBC in its Complaint and the MLBPA in its Counterclaims request that the court grant injunctive relief. [3] Considering the allegations of CBC's Complaint and the allegations of MLBPA Counterclaims as well as the relief which CBC and the MLBPA seek, the court finds that the MLBPA has raised questions of law and fact common to the questions of the original action. The court further finds that the intervention of the MLBPA will not interject issues that will complicate resolution of the issues presented in CBC's Complaint nor will the MLBPA intervention in this matter interject collateral issues. Specifically, the court finds that the breach of contract claim made by the MLBPA will not complicate this matter or delay the proceedings. Thus, pursuant to this court's discretion it finds, in the alternative, that the MLBPA should be granted permissive [*16] intervention. See *Hartong v. Blue Valley Federal Sav. & Loan Ass'n, 767 F. Supp. 1017, 1022 (W.D. Mo. 1990)* (holding that where claims raised by a proposed intervenor have questions of law or fact in common with the main action, the decision whether to allow permissive intervention is within the court's discretion).

3 In its Response CBC argues that: (1) the intervention of the MLBPA will increase the cost of litigation as a result of increased discovery burdens; (2) that the MLBPA's breach of contract claim will add to the complexity of this matter; and (3) that while the MLBPA seeks injunctive relief, Major League Baseball does not. Doc. 21. For the reasons stated above, the court finds no merit in the first two arguments. Additionally, Major League Baseball *does* ask for injunctive relief. See Doc. 7, Counterclaim, P9.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Motion to Intervene filed by the MLBPA is **GRANTED.** [15]

**IT IS FURTHER ORDERED** that the Clerk shall [*17] file and docket the Answer and Counterclaim submitted by Intervenor the MLBPA.

MARY ANN L. MEDLER

UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of June, 2005.

LEXSEE 2007 U.S. DIST. LEXIS 26679

**JAMIE MUSIC PUBLISHING CO. d/b/a DANDELION MUSIC CO., DARTOWN, INC. d/b/a STILRAN MUSIC, and JAMIE RECORD COMPANY, Plaintiffs, -against- ROC-A-FELLA RECORDS, LLC, ISLAND DEF JAM MUSIC GROUP, UNIVERSAL MUSIC GROUP, INC., DIPLOMATIC MAN, INC., CAMERON GILES d/b/a KILLA CAM MUSIC, JUELZ SANTANA, JIMMY JONES, d/b/a THE DIPLOMATS, GREGORY OMAR GREEN and SEON THOMAS d/b/a HEATMAKERZ MUSIC, Defendants. BARBARA MASON, Intervention Plaintiff, -against- JAMIE MUSIC PUBLISHING CO. d/b/a DANDELION MUSIC CO., DARTOWN, INC. d/b/a STILRAN MUSIC, and JAMIE RECORD COMPANY, ROC-A-FELLA RECORDS LLC, ISLAND DEF JAM MUSIC GROUP, UNIVERSAL MUSIC GROUP, INC., DIPLOMATIC MAN, INC., CAMERON GILES d/b/a KILLA CAM MUSIC, JUELZ SANTANA, JIMMY JONES, d/b/a THE DIPLOMATS, GREGORY OMAR GREEN and SEON THOMAS d/b/a HEATMAKERZ MUSIC Intervention Defendants.**

**05 Civ. 9922 (BSJ) (JCF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

***2007 U.S. Dist. LEXIS 26679***

**April 12, 2007, Decided**
**April 12, 2007, Filed**

**COUNSEL:** [*1] For Jamie Music Publishing Co., doing business as Dandelion Music Co., Plaintiff: Michael S. Elkin, LEAD ATTORNEY, Winston & Strawn LLP (NY), New York, NY; Shari Hope Markowitz, LEAD ATTORNEY, George Thomas Soterakis, Thelen Reid Brown Raysman & Steiner, LLP(NYC)#1, New York, NY; Stephen Jeffrey Dallas, Law Office of Daniel S. Braverman, New York, NY.

For Jamie Record Company, Plaintiff: Michael S. Elkin, LEAD ATTORNEY, Winston & Strawn LLP (NY), New York, NY; Shari Hope Markowitz, LEAD ATTORNEY, George Thomas Soterakis, Thelen Reid Brown Raysman & Steiner, LLP(NYC)#1, New York, NY; Stephen Jeffrey Dallas, Law Office of Daniel S. Braverman, New York, NY.

For Roc-A-Fella Records, LLC, Defendant: Andrew Harrison Bart, LEAD ATTORNEY, Carletta Flora Higginson, Jenner & Block LLP (NYC), New York, NY.

For Island Def Jam Music Group, Defendant: Andrew Harrison Bart, LEAD ATTORNEY, Carletta Flora Higginson, Jenner & Block LLP (NYC), New York, NY.

For Universal Music Group Inc., Defendant: Andrew Harrison Bart, LEAD ATTORNEY, Carletta Flora Higginson, Jenner & Block LLP (NYC), New York, NY.

For UMG Recordings, Inc., Defendant: Andrew Harrison Bart, LEAD ATTORNEY, Carletta [*2] Flora Higginson, Jenner & Block LLP (NYC), New York, NY.

For Barbara Mason, Movant: Oren J. Washavsky, Troutman Sanders LLP(NYC), New York, NY.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION**

*MEMORANDUM AND ORDER*

This action was commenced by Jamie Music Publishing Co. d/b/a Dandelion Music Co. ("JMP"), Dartown, Inc. d/b/a Stilran Music ("Dartown"), and Jamie Record Company ("JRC") against the defendants, asserting willful copyright infringement of the musical composition "Yes, I'm Ready" (the "Composition"). The parties were in settlement negotiations when Barbara Mason, the sole author of the Composition, moved to intervene in order to challenge JMP's and Dartown's claims of copyright ownership, to allege copyright infringement against JMP, Dartown, and Universal Music Group, Inc., and to allege unjust enrichment against JMP, Dartown, and all defendants. For the following reasons, Ms. Mason's motion to intervene is granted.

*Background*

On November 23, 2005, the plaintiffs filed a complaint charging the defendants with willful copyright infringement of the Composition. On March 6, 2006, Dartown's claims were withdrawn without [*3] prejudice. In April 2006, the remaining parties agreed to settle. However, on December 19, 2006, before any stipulation of discontinuance was filed, Ms. Mason submitted her motion to intervene, in which she claims to be the sole author of the Composition and the owner of its copyright. (Notice of Motion and Motion by Barbara Mason to Intervene as a Plaintiff Pursuant to *Fed. R. Civ. P. 24* ("Motion to Intervene"), PP 2,9). Plaintiffs JMP and JRC oppose the motion to intervene, claiming that Ms. Mason expressly assigned the Composition to JMP and Dartown in 1965 when she signed an exclusive Author's & Composer's Contract to which a schedule of songs, including the Composition, was appended. (Plaintiff's Memorandum of Law in Opposition to Intervention Plaintiff Barbara Mason's Motion to Intervene ("Pl. Memo."), at 2, 4). Ms. Mason submitted a reply in which she disputes that such assignment was effected or that the schedule of songs actually existed. (Intervention Plaintiff Barbara Mason's Reply Memorandum in Support of Motion to Intervene as a Plaintiff ("Intervenor's Reply"), at 1-2).

*Discussion*

A. *Intervention*

In her motion to [*4] intervene, Ms. Mason references *Rules 24(a)* and *24(b) of the Federal Rules of Civil Procedure*, which govern intervention as of right and permissive intervention, respectively. (Memorandum of Points and Authorities in Support of Barbara Mason's Motion to Intervene as a Plaintiff in This Matter ("Intervenor's Memo."), attached to Motion to Intervene, at 4, 10). Under *Rule 24(a)*, an application to intervene must be granted

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Fed. R. Civ. P. 24(a)(2)*. Ms. Mason may well have an absolute right of intervention in the circumstances of this case. I need not reach that issue, however, because permissive intervention is warranted under *Rule 24(b)*. *See Int'l Design Concepts, LLC v. Saks, Inc., No. 05 Civ. 4754, 2007 U.S. Dist. LEXIS 25134, 2007 WL 945099, at *2 (S.D.N.Y. March 27, 2007)* [*5] (finding no need to determine whether intervention as of right under *Rule 24(a)* is appropriate when permissive intervention under *Rule 24(b)* is warranted).

*Rule 24(b)* provides in part that

> [u]pon timely application anyone may be permitted to intervene in a action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Permissive intervention is thus within the court's discretion. *Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152, 157 (S.D.N.Y. 2003)* (citation omitted). In exercising that discretion, courts consider factors that include

> "the nature and extent of the intervenors' interests," the degree to which those

> interests are "adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. [*6] "

*Id.* (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc., 797 F.2d 85, 89 (2d Cir. 1986)* (alteration in original)).

In this case, these factors plainly favor intervention. First, Ms. Mason has a direct interest in the purported copyright infringement because she claims to be the sole author of the Composition and the owner of its copyright. (Motion to Intervene, PP 2, 9). While the plaintiffs argue that Ms. Mason's claim is baseless because she expressly assigned the copyright to them (Pl. Memo. at 2, 4), Ms. Mason contests this factual assertion. Since the plaintiffs' argument is based on disputed factual issues, it does not warrant denial of the motion for intervention. *See Int'l Design Concepts, 2007 U.S. Dist. LEXIS 25134, 2007 WL 945099, at *3* (concluding that permissive intervention under *Rule 24(b)* was appropriate, in part because the intervenor "will contribute to the full development of factual issues"); *Clarkson v. Coughlin, 145 F.R.D. 339, 343 (S.D.N.Y. 1993)*("*Rule 24(b)(2)* is satisfied when, despite factual differences between the parties, a common question of law is involved."). There are common questions [*7] of law because Ms. Mason raises the same copyright infringement claims against the defendant Universal Music Group, Inc. as do the plaintiffs. Accordingly, if her claims are true, Ms. Mason has a direct interest in the outcome of the current litigation because she will be affected if the copyright to the Composition is found to belong to the plaintiffs or if it is found to have been infringed upon by the defendants.

Second, there is no reason to believe that Ms. Mason's concerns are coextensive with those of the plaintiffs such that her interests would be adequately represented by plaintiffs' counsel. *See Diversified Group, 217 F.R.D. at 157*. Ms. Mason and the plaintiffs each claim to be the sole owner of the copyright to the Composition: the plaintiffs claim that Ms. Mason expressly assigned the copyright to them, while Ms. Mason claims that no such assignment exists. Thus, the plaintiffs are unlikely to represent Ms. Mason's interest in the present case.

Finally, intervention by Ms. Mason should not impede the progress of the litigation. A plaintiff bringing a copyright infringement claim must prove ownership of a valid copyright in the allegedly infringed-upon [*8] work. *Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005)*. Thus, in this case the ownership of the Composition's copyright is critical to the pending claims. Additionally, a plaintiff alleging a copyright infringement claim must prove that the defendant infringed upon the copyright by "violating one of the exclusive rights that *17 U.S.C. § 106* bestows upon the copyright holder." *Id.* "Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying. . . . [T]he plaintiff must first 'show that his work was actually copied'; second he must establish substantial 'similarity' or that the 'copying amounts to an improper or unlawful appropriation.'" *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003)*(quoting *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc., 150 F.3d 132, 137-38 (2d Cir. 1998))*. As the plaintiffs and defendants were engaged in discovery focusing on these factors, Ms. Mason's intervention should not require extensive additional discovery. Furthermore, [*9] because the issue of copyright ownership is central to all claims, Ms. Mason's intervention will actually assist in providing a more complete record.

*Conclusion*

For the reasons set forth above, Ms. Mason's motion to intervene pursuant to *Rule 24(b)* is granted. Ms. Mason shall serve and file her Intervenor's Complaint by May 11, 2007. [1]

> 1 Having discontinued the claims that it had asserted as a plaintiff, Dartown will now be restored to the litigation as a defendant.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

April 12, 2007

LEXSEE 2007 U.S. DIST. LEXIS 48351

**BERNABE SANTILLAN, individually and on behalf of Minor Son, GABRIEL ZAMBRANO, Plaintiff, v. CITY OF REEDLEY, CITY OF REEDLEY OFFICERS ROBERT MACEDO # 54, RAY CAMACHO # 68, HECTOR ALEMAN # 56, Defendant.**

**CIV F 07-391 AWI SMS**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

***2007 U.S. Dist. LEXIS 48351***

**June 27, 2007, Decided**

**COUNSEL:** [*1] Bernabe Santillan, Individually and on Behalf of Minor Son Gabriel Zambrano, Plaintiff, Pro se, Reedley, CA.

For City of Reedley, Robert Macedo, # 54, City of Reedley Police Officer, Ray Camacho, # 68, City of Reedley Police Officer, Hector - Aleman, # 56, City of Reedley Police Officer, Defendants: James J. Arendt, LEAD ATTORNEY, Weakley, Ratliff, Arendt & McGuire, Fresno, CA.

**JUDGES:** Anthony W. Ishii, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Anthony W. Ishii

**OPINION**

**ORDER ON DEFENDANTS'S AMENDED MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT**

This is a pro se civil rights case that alleges both federal and state law causes of action and arises from an encounter between Plaintiff Bernabe Santillan ("Santillan") and officers from the City of Reedley Police Department. Defendants now move to dismiss various causes of action and for a more definite statement. For the reasons that follow, Defendants's motion to dismiss will be granted, but the motion for more definite statement will be denied.

**BACKGROUND**

From the complaint, Santillan was arrested at his home on August 10, 2005, between 12:00 and 12:30 p.m. by Defendants pursuant to a warrant. Complaint at PP 6-7. Defendant Aleman grabbed Santillan's left arm [*2] and proceeded to place it behind Santillan's back. [1] Id. at P 8. Santillan told Aleman that he was unable to bend his left arm toward his back because he had recently had surgery on his left shoulder; Santillan had also had an injection into his shoulder joint on the prior day as part of an MRI. Id. at P 9. Aleman, however, was persistent in cuffing Santillan and forced Santillan's left arm behind his back, which caused Santillan severe pain. Id. Santillan advised Defendants that his right shoulder was also injured, but Defendants persisted in handcuffing Santillan from behind. Id. Eventually, Defendant Camacho instructed that Santillan be cuffed from the front. Id. As the group left the house and went towards the patrol car, Camacho and Aleman took hold of Santillan's arms, tried to force the arms towards Santillan's back, and caused Santillan severe pain. Id. at P 10. Santillan told Aleman that Aleman was hurting him and to stop bending his arm back. Id. Aleman replied for Santillan to stop resisting. Id. Defendant Macedo then grabbed Santillan's arm and bent and twisted it farther back than Aleman had done. Id. at P 11. Macedo continued to twist and bend Santillan's arm, which caused [*3] Santillan severe pain. Id. After several verbal exchanges, Macedo for no reason threw Santillan down on the hot asphalt road. Id. at P 12. Santillan landed on his left shoulder, which caused more

pain. Id. When Santillan asked Macedo why he had thrown him down, Macedo replied that Santillan had simply fallen. Id. Santillan's shoulder pains continued and he developed chest pains. Id. Santillan requested an ambulance, and Defendants smiled. Id. Santillan asked his daughter to call an ambulance, and the Defendants told the daughter that one had been summoned. Id. Santillan's daughter confronted the Defendants about their conduct, and Aleman told the daughter to "back off" or she would go to jail. Id. at P 13. Santillan was in pain and still on the hot asphalt when Camacho prompted him to get up. Id. Without assistance, Santillan managed to get up and lean against the patrol car, but Aleman told Santillan that he could not lean on the car. Id. Santillan sat on a grassy patch next to the sidewalk. Id. Santillan's daughter then confronted Macedo about why Macedo had thrown Santillan to the ground and attempted to get Macedo's name and badge number. Id. at P 15. Macedo got angry and refused [*4] to give the information. Id. Santillan's son, Gabriel Zambrano, witnessed the assault and mistreatment of Santillan, which caused Zambrano to suffer emotionally. Id. at P 16. The ambulance later arrived and took Santillan to the Sierra Kings Hospital. Id. at P 17. At the hospital, Camacho handcuffed Santillan to the bed, but because the cuff's chain was short, Santillan's arm was in a hanging position that caused Santillan pain. Id. Camacho refused to alter the cuffs. Id. Santillan never offered violence or resistance to Defendants. Id. at P 18.

1 The complaint is generally in terms of "Plaintiff" instead of Santillan. Zambrano is a plaintiff in this suit, but is the minor son of Santillan. Zambrano is specifically identified at one place in the complaint. Given the nature of the allegations, the Court reads "plaintiff" as referring mostly to Santillan for purposes of this recitation.

Santillan, individually and on behalf of his minor son Zambrano, filed suit in this Court alleging claims under *42 U.S.C. § 1983* for violations of the *Fourth*, *Eighth*, and *Fourteenth Amendments*, a *Monell* claim, and state law battery and infliction of emotional distress. Santillan requests compensatory damages, [*5] punitive damages, and declaratory relief.

**LEGAL STANDARD**

Under *Federal Rule of Civil Procedure 12(b)(6)*, a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. This rule provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*; *Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)*. In reviewing a complaint under *Rule 12(b)(6)*, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Newman v. Sathyavaglswaran, 287 F.3d 786, 788 (9th Cir. 2002)*; *Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999)*. The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pac. Props. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004)*; *Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994)*. But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted [*6] deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)*; see also *Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)*; *Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)*. Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren, 328 F.3d at 1139*; *Western Mining Council, 643 F.2d at 624*. Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)*. In deciding whether to dismiss a claim under *Rule 12(b)(6)*, the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. See *Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001)*; *Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996)*; *MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)*. [*7] A dismissal under *Rule 12(b)(6)* may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)*; *Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)*. If a *Rule 12(b)(6)* motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend

the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)* (en banc) (quoting *Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995))*. In other words, leave to amend need not be granted when amendment would be futile. *Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002)*.

**I. MOTION TO DISMISS**

*Defendant's Argument*

Defendants argue that: (1) the *Fourth Amendment* claim should be dismissed with respect to Zambrano because there are no allegations that Defendants used any force, excessive or otherwise, against Zambrano; (2) the *Eighth Amendment* claim should be dismissed because neither Santillan nor Zambrano were prisoners; (3) the *Fourteenth Amendment* equal protection [*8] claim should be dismissed because Zambrano has not alleged conduct that could establish such a violation; (4) the *Monell* claim should be dismissed as to Zambrano because there are no constitutional violations alleged as to Zambrano; (5) the claims against the officers in their official capacities should be dismissed as redundant; (6) Zambrano's state law claims should be dismissed for failure to comply with the California Tort Claims Act; (7) Zambrano's battery claim should be dismissed because there are no allegations that he was battered; (8) Plaintiffs's request for declaratory relief should be dismissed because the controversy is moot for purposes of declaratory relief; and (9) Plaintiffs's request for attorney's fees should be dismissed because *pro se* litigants are not entitled to attorney's fees.

*Plaintiffs's Opposition*

Plaintiffs have filed no opposition or response of any kind.

*Discussion*

Reading the complaint, it is not clear that Zambrano is alleging anything other infliction of emotional distress. The factual allegations in the complaint center almost exclusively around Santillan and his interaction with the three police officers. Although the Court harbors doubts, in the absence [*9] of an opposition, it will assume that Defendants's characterization of the complaint is correct and that Zambrano is alleging claims in addition to emotional distress.

As to Zambrano's *Fourth Amendment* claim, the allegations are insufficient. "The *Fourth Amendment* protects persons against unreasonable searches and seizures." *Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995)*. The *Fourth Amendment* reasonableness standard governs all claims involving seizures of the person, including claims for excessive force. See *Quintanilla v. City of Downey, 84 F.3d 353, 357 (9th Cir. 1996)*. There are no allegations that the police searched or seized Zambrano, and all of the allegations of seizures are with regard to Santillan. Because there are no allegations that the Defendants searched or seized Zambrano, let alone that they did so in an unreasonable manner, dismissal of any *Fourth Amendment* claim by Zambrano is appropriate.

As to both Plaintiffs's *Eighth Amendment* claims, those claims must be dismissed. The complaint alleges conduct against Santillan that occurred at his residence. The *Eighth Amendment* applies only after conviction and sentence, i.e. convicted prisoners, and does not apply [*10] to pretrial detainees. *Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)*; *Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987)*; *Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986)*. The events of this claim occurred at Santillan's residence in the process of serving an arrest warrant and Santillan and Zambrano were not convicted prisoners; there can be no *Eighth Amendment* violations. [2] Dismissal of the *Eighth Amendment* claims without leave to amend is appropriate.

2 Santillan had not yet been convicted when he was in the hospital, and was thus, a pre-trial detainee. See *Jones, 781 F.2d at 771*. Any of Santillan's claims that are based on conduct occurring at the hospital do not arise under the *Eighth Amendment*. Id.; see also *Maddox v. City of Los Angeles, 792 F.2d 1408, 1412 (9th Cir. 1986)*.

As to the *Fourteenth Amendment* claims, with respect to Zambrano, there are no allegations that the officers did anything expressly to Zambrano. With respect to Santillan, to the extent he alleges a *Fourteenth Amendment* Equal Protection violation, his allegations are inadequate. "To state a claim under *42 U.S.C. § 1983* for a violation of the *Equal Protection Clause of the Fourteenth Amendment*, [*11] a plaintiff must show that the defendants acted with an intent or purpose to

discriminate against the plaintiff based upon membership in a protected class." *Lee, 250 F.3d at 686*; *Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)*. There are no allegations that Defendants acted with an intent to discriminate against either Zambrano or Santillan based on their membership in a protected class. Indeed, there are no allegations that either Zambrano or Santillan are members of a protected class. Further, it appears that Santillan attempts to allege that the excessive or unreasonable force used in his seizure violated the *Fourteenth Amendment*. Such reliance is improper since claims of unreasonable seizures are governed by the *Fourth Amendment*, not the *Fourteenth Amendment* substantive *due process clause*. See *Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029 (9th Cir. 2002)*. Dismissal of the Zambrano's *Fourteenth Amendment* claims is appropriate. To the extent that Santillan's equal protection claim is based on equal protection or conduct governed by the *Fourth Amendment*, dismissal is also appropriate.

With respect to the *Monell* claim, when there is no underlying constitutional [*12] violation by municipal officers, there is no *Monell* liability against a municipality. See *City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806*; *Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001)*; *Quintanilla, 84 F.3d at 355*. Since no constitutional injuries have been properly alleged regarding Zambrano, he cannot allege municipal liability/a *Monell* claim against the City of Reedley. Dismissal of this claim by Zambrano is appropriate.

With respect to the defendant police officers, Aleman, Camacho and Macedo have been sued in both their individual and official capacities. See Complaint at P 5. "A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996)*. When "officers in their official capacity and the local government entity for whom they work are both named in a lawsuit, the officers in their official capacity are redundant defendants and may be dismissed." *Wisler v. City of Fresno, 2007 U.S.Dist. LEXIS 18666, *19 (E.D. Cal. 2007)*; *Luke v. Abbott, 954 F. Supp. 202, 203-04 (C.D. Cal. 1997)*. Since the City of Reedley employs Aleman, Camacho, and Macedo and [*13] is already a party to this suit, naming these officers in their "official capacity" is redundant. Aleman, Camacho, and Macedo will be dismissed in their "official capacities" without leave to amend.

As to Zambrano's state law claims for battery and infliction of emotional distress, the complaint alleges that "Plaintiff fulfilled all prerequisites to filing this action, including the notice of claim required by *California Government Code § 900 et seq.*" Complaint at P 2. Under the California Tort Claims Act, a plaintiff must provide a notice of claim to a public entity where the plaintiff wishes to maintain state law causes of action against either the public entity or against the public entity's employees for conduct done in the scope of employment. See *Cal. Gov. Code §§ 945.4, 950.2*; *City of San Jose v. Superior Court, 12 Cal.3d 447, 454-55, 115 Cal. Rptr. 797, 525 P.2d 701 (1974)*; *Briggs v. Lawrence, 230 Cal.App.3d 605, 612-13, 281 Cal. Rptr. 578 (1991)*. The notice must meet the requirements of *California Government Code § 910*. *Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal.4th 441, 445, 20 Cal. Rptr. 3d 176, 99 P.3d 500 (2004)*. *California Government Code § 910* requires, *inter alia*, that claim include "the name and post office address of [*14] the claimant," and a "general description of the . . . injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim." *Cal. Gov. Code § 910(a), (d)*. The California Tort Claims Act notice requirements are not intended "to prevent surprise," rather they are intended to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose, 12 Cal. 3d at 455*. "[C]ompliance with the claims statute is mandatory and failure to file a claim is fatal to the cause of action." *Id. at 454*. "Where two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another. *Nelson v. County of Los Angeles, 113 Cal.App.4th 783, 796, 6 Cal. Rptr. 3d 650 (2003)*; *Nguyen v. Los Angeles County Harbor/UCLA Medical Center, 8 Cal. App. 4th 729, 732-34, 10 Cal. Rptr. 2d 709 (1992)*; *Peterson v. Vallejo, 259 Cal. App. 2d 757, 765-66, 66 Cal. Rptr. 776 (1968)*.

Here, the tort claim is extensive and generally tracks the complaint. [3] However, no general reference to Santillan's son, nor a specific reference to Gabriel Zambrano, can [*15] be found in the tort claim letter, and Bernabe Santillan is the only identified claimant. See Exhibit A to Motion to Take Judicial Notice. The tort claim letter sent by Santillan simply fails to identify

Zambrano in any manner, fails to identify any claims that Zambrano may have, and does not indicate that Santillan is trying to act for Zambrano. The complaint expressly indicates that Zambrano has suffered emotional distress. See Complaint at P 16. Zambrano's emotional distress is obviously separate and distinct from any of Santillan's damages. [4] Since there is an insufficient indication that Zambrano or someone acting on his behalf has filed a tort claim with the City of Reedley, Zambrano's state law claims must be dismissed. [5] See *City of San Jose, 12 Cal.3d at 454*; *Nelson, 113 Cal.App.4th at 796*.

3 Defendants move the Court to take judicial notice of the California Tort Claim letter sent to the City of Reedley by Santillan. There has been no objection, so the Court will grant Defendants's motion and take judicial notice of the letter as a governmental record. See *Fed. R. Evid. 201(b)(2)*; *Torrens v. Lockheed Martin Services Group, Inc., 396 F.3d 468, 472 (1st Cir. 2005)*.

4 Also, [*16] to the extent that Zambrano alleges a battery claim, that claim is improperly pled because there is no allegation that the officers used any force against Zambrano. See *Susag v. City of Lake Forest, 94 Cal.App.4th 1401, 1413, 115 Cal. Rptr. 2d 269 (2002)*.

5 The Court took judicial notice of the claim letter submitted by Santillan as a government record; it did not consider the declaration of Lori Oken for anything other then authentication. See *Swedberg v. Marotzke, 339 F.3d 1139, 1146 (9th Cir. 2003)*.

As to Plaintiffs's claim for declaratory relief, there is no separate cause of action for declaratory relief expressly pled, but the prayer requests a "declaratory judgment that the rights guaranteed to the Plaintiff by the *4th*, *8th*, and *14th Amendments of the United States Constitution* by *42 U.S.C. § 1983* has been violated by the Defendants." See Complaint at p. 8. The Court assumes that the Plaintiffs are seeking declaratory relief under *28 U.S.C. § 2201*. The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." *28 U.S.C. § 2201*; [6] *Spokane Indian Tribe v. United States, 972 F.2d 1090, 1091 (9th Cir. 1992)*. "The purpose [*17] of *[§ 2201]* is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure - or never." *Spokane Indian Tribe, 972 F.2d at 1091-92*. For purposes of declaratory relief, "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)*; *Blair v. Shanahan, 38 F.3d 1514, 1519 (9th Cir. 1994)*. Stated differently, a plaintiff cannot rely only on past harm as a basis for a request for declaratory relief. See *Fieger v. Ferry, 471 F.3d 637, 643 (6th Cir. 2006)*; *McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004)*; see also 12 *Moore's Federal Practice - Civil § 57.04[3]* (2006 ed.) ("However, declaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued."). Thus, a plaintiff may have standing to sue for damages and yet lack standing to sue for prospective relief. See *Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999)*; Le v. Cal. Nurses Ass'n, 2006 U.S. Dist. LEXIS 77321, *7 (E.D. Cal. 2006). [*18] Here, Plaintiffs appear to be requesting a declaration that involves only past conduct, where the harm has already occurred, and where there appears to be no continuing adverse effects. Under these circumstances, Santillan has standing to sue for damages under *42 U.S.C. § 1983*, but has no standing to sue for declaratory relief that his constitutional rights were violated. See *Lyons, 461 U.S. at 102*; *Fieger, 471 F.3d at 643*; *Hodgers-Durgin, 199 F.3d at 1041 n.1*; *Blair, 38 F.3d at 1519*; *Spokane Indian Tribe, 972 F.2d at 1091-92*; 12 *Moore's Federal Practice - Civil § 57.04[3]*. Dismissal of this part of the prayer without leave to amend is appropriate.

6 *28 U.S.C. § 2201* reads in pertinent part:

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under *section 7428 of the Internal Revenue Code of 1986* [*26 USCS § 7428*], a proceeding under *section 505* or *1146 of title 11*, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [*19 USCS § 1516a(f)(10)*]), as determined [*19] by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Finally, Plaintiffs pray for attorney's fees. See Complaint at p. 8. A *pro se* litigant may not recover attorney's fees under *42 U.S.C. § 1988*, even if he is a prevailing party in a civil rights case. *Kay v. Ehrler*, *499 U.S. 432, 435, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991)*; *Gonzalez v. Kangas, 814 F.2d 1411 (9th Cir. 1987)*. Plaintiffs's request for attorney's fees will be dismissed without leave to amend.

**II. MOTION FOR MORE DEFINITE STATEMENT**

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." *Fed. R. Civ. P. 12(e)*; *Thompson v. City of Shasta Lake*, *314 F. Supp. 2d 1017, 1022 (E.D. Cal. 2004)*. A *Rule 12(e)* motion is "ordinarily restricted to situations where [*20] a pleading suffers from unintelligibility rather than want of detail, and if the requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim such motion is inappropriate." *Castillo v. Norton*, *219 F.R.D. 155, 163 (D. Ariz., 2003)*. "If the moving party could obtain the missing detail through discovery, the motion should be denied." *Davison v. Santa Barbara High School District, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998)*.

Here, Defendants's motion indicates that it is a *Rule 12(b)(6)* and *Rule 12(e)* motion. The memorandum in support of the motion does not specifically discuss or argue why relief should be granted under *Rule 12(e)*. Instead, Defendants focus on the inadequacies of the allegations in the complaint. The Court has now granted the *12(b)(6)* motion. Also, the Court has reviewed the complaint and does not find the allegations so vague or ambiguous that a responsive pleading cannot be reasonably be made. Defendants may flesh out further details through the discovery process. The *Rule 12(e)* motion is denied.

**III. REPRESENTATION OF MINOR PLAINTIFF GABRIEL ZAMBRANO**

Additionally, although not expressly part of this [*21] motion, Santillan is proceeding *pro se* individually and on behalf of his minor son Gabriel Zambrano. [7] See Complaint at p. 1. No attorney appears on the Court's docket on behalf of Zambrano. Although "a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself." *Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997)*; *C.E. Pope Equity Trust v. United States*, *818 F.2d 696, 697 (9th Cir. 1987)*. Consistent with this principle, "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns, 114 F.3d at 877*; see also *Campbell v. Burt*, *141 F.3d 927, 931 (9th Cir. 1998)*. Thus, Santillan prosecuting this case in this Court *pro se* on behalf of Zambrano is improper and will not be permitted. See *Johns, 114 F.3d at 877*. Zambrano will have thirty (30) days from the date of this order in which to obtain counsel to represent him. If counsel is not obtained within thirty (30) days, the Court will dismiss Zambrano from this suit without prejudice. See id.

7 Santillan has not been appointed as Zambrano's guardian ad litem for this case and no such motion is pending.

**CONCLUSION**

Defendants move [*22] to dismiss various claims under *Rule 12(b)(6)* and for a more definite statement under *Rule 12(e)*. With respect to the *Rule 12(b)(6)* motion, dismissal of Zambrano's *Fourth Amendment*, *Fourteenth Amendment*, and *Monell* claims is appropriate since there are no allegations that Defendants used any force or expressly did anything to Zambrano, and dismissal of his state law claims is appropriate because it has not been sufficiently alleged or shown that he complied with the California Tort Claims Act. Dismissal of these claims will be with leave to amend (consistent with this order) as it is not clear that amendment would be futile. Zambrano's *Eighth Amendment* claim will be dismissed without leave to amend because Zambrano was not a convicted prisoner and the events took place at Santillan's home. With respect to Santillan, to the extent he is attempting to allege an equal protection claim under the *Fourteenth Amendment*, that claim will be dismissed with leave to amend because the complaint does not allege that Santillan's rights were violated due to membership in a protected class. Santillan's *Eighth Amendment* claim will be dismissed without leave to amend because the transaction in question [*23] occurred at Santillan's home and there is no indication

that Santillan was a convicted prisoner. The prayer for declaratory relief will be dismissed without leave to amend since the declaratory relief requests relief only for a harm that is in the past. The prayer for attorneys's fees will be dismissed without leave to amend since pro se plaintiffs may not recover attorney's fees. Defendants's *Rule 12(e)* motion will be denied since the complaint is not so vague and ambiguous that a responsive pleading cannot reasonably be made and any further detail can be obtained through discovery. Finally, Santillan may not *pro se* represent his minor son Zambrano. Zambrano will have thirty (30) days from service of this order in which to obtain a licensed attorney to represent him in this case. If Zambrano does not obtain counsel in the allotted time, the Court will *sua sponte* dismiss his claims without prejudice. See *Johns, 114 F.3d at 876-77*.

Accordingly, IT IS HEREBY ORDERED that;

1. Defendants's motion to dismiss Zambrano's *Fourth Amendment*, *Fourteenth Amendment*, and state law causes of action is GRANTED with leave to amend;

2. Defendants's motion to dismiss Zambrano's *Eighth Amendment* claim is [*24] GRANTED without leave to amend;

3. Defendants's motion to dismiss Santillan's *Fourteenth Amendment* equal protection claim is GRANTED with leave to amend;

4. Defendants's motion to dismiss Santillan's *Eighth Amendment* claim is GRANTED without leave to amend;

5. Defendants's motion to dismiss Plaintiffs's prayer for declaratory relief and attorney's fees is GRANTED without leave to amend;

6. Defendants's *Rule 12(e)* motion is DENIED;

7. Plaintiffs may file an amended complaint, consistent with this order, by July 13, 2007;

8. If Plaintiffs do not file an amended complaint, Defendants are to file a responsive pleading to Plaintiffs's complaint by July 20, 2007;

9. Zambrano may obtain a licensed attorney to represent him in this case within thirty (30) days of service of this order, which is a necessary requirement for pursuing this case, and is to inform the Court immediately of his retention of an attorney;

10. Failure of Zambrano to obtain an attorney to represent him in this case will result in the *sua sponte* dismissal of Zambrano's claims without prejudice and without further notice.

IT IS SO ORDERED.

**Dated: June 27, 2007**

**/s/ Anthony W. Ishii**

UNITED STATES DISTRICT JUDGE